Pan Fei LAM, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–99–00195–CR.

Court of Appeals of Texas,
San Antonio.

April 19, 2000.

Rehearing Overruled June 16, 2000.

Mark Stevens, San Antonio, for Appellant.

Frank Follis, Asst. Dist. Atty., Seguin, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: CATHERINE STONE, Justice.

Pan Fei "Ricky" Lam appeals from convictions for the offenses of murder and aggravated assault with a deadly weapon. On appeal, Ricky brings forward twelve points of error in which he complains about the introduction of extraneous offense evidence, the introduction of an oral statement made to an investigating officer, and jury charge error. Finding no reversible error, we affirm the trial court's judgment.

### FACTS

The material facts are undisputed. On August 21, 1998, Ricky was staying in a guest room in the home of his father and stepmother, Ling and Lee Lam. Courtney and William, the Lams' eleven year-old daughter and twelve year-old son, also lived at the Lam residence. In celebration of her birthday, Courtney had several friends spending the night at the house; the girls camped out in the living room in front of the television set. Sometime between 11:00 p.m. and 1:00 a.m., Ricky returned home after working at the family's restaurant. Ricky entered the living room, turned on the lights, and asked Courtney if the girls were asleep; they were not. Ricky went to his room. For the next couple of hours, Ricky sporadically popped into the living room, turned on the lights, repeating his question of whether the girls were asleep. At one point in the night, the girls went outside on the back porch for fresh air, where they saw Ricky smoking "something that did not smell like a cigarette." A crack pipe and lighter were later found at the crime scene. The girls fell asleep sometime between 2:00 a.m. and 3:00 a.m.

At approximately 3:00 a.m., Jessie Hester, one of Courtney's guests, was awakened by Ricky when he placed one of his hands over her mouth and whispered inaudible remarks into her ear. Hester struggled, kicking the girls sleeping next to her. The other girls were awakened by Hester's struggle. Startled, they began screaming. Ricky was holding a hunting knife with a 3–4 inch blade to Hester's throat.

The Lams were awakened by the girls' screams. Lee entered the living room first. She saw Ricky "trying to pick the girl up . . . to molest her." Ricky unhanded Hester, then he attacked Lee. Lee testified that Ricky came toward her, screamed out an obscenity, and pushed her to the wall. On the ground, Lee saw that Ricky had a knife. She felt a "warm liquid" on the back of her neck, but did not immediately realize she had been cut. Courtney indicated that Ricky "beat [Lee] until she collapsed." During this attack, Courtney's friends were able to escape harm by hiding in Courtney's closet. Courtney called the police. Lee called out to Ling for help. Within moments, Ling entered the room and attempted to pull Ricky away from Lee. A struggled ensued, which ended when Ricky stabbed Ling in the chest, delivering a fatal wound. Ricky dropped his weapon, walked to his room, climbed out the window, and drove away

from the house in his truck. Seguin police officers apprehended Ricky the following day.

Ricky was tried for the aggravated assault of Lee and the murder of Ling. At trial, the defense attempted to show that Ricky's actions were not intentional.

### EXTRANEOUS OFFENSE EVIDENCE

■ At trial, the State sought, and was permitted over defense counsel's objection, to introduce evidence that investigating police officers found a young girl's bra and panties and a pornographic videotape in the room in which Ricky was staying. Crack cocaine and a crack pipe were also found in that room. The drug evidence was admitted without objection. The State introduced the evidence regarding the adolescent undergarments and videotape during its case-in-chief in an attempt to explain its theory of the events that led to the charged offenses. The State theorized that Ricky sexually aroused himself with the undergarments and videotape, and, after "fortifying" his courage by smoking crack cocaine, he ventured into the living room, grabbing one of the girls, intending to molest her. When Ling interrupted this plan, Ricky lashed out at her verbally and stabbed her in the neck. Lee entered the room, the men struggled, and Ricky stabbed Lee in the chest, fatally wounding him. The State reiterated this theory during its closing argument.

At trial, the State was unable to establish who owned the undergarments. It was never suggested that they belonged to one of Courtney's friends. Rather, it was suggested that Ricky had taken the items, which were given to William as a gag gift, after William had thrown them in the trash. It also appears that the State was unable to affirmatively establish that Ricky was in fact watching the videotape on the night in question. It is not clear from the record whether the videotape was found in a video machine or simply on the floor. The State could only establish that investigating officers found it in Ricky's room.

In points of error one through four, Ricky argues that the trial court erred in admitting evidence of these extraneous bad acts. *See Plante v. State*, 692 S.W.2d 487, 490 n. 3 (Tex.Crim.App.1985) (admissibility of extraneous conduct that reflects adversely on character of defendant, regardless of whether that conduct gives rise to criminal liability, is subject to same analysis as extraneous penal offense under Rule 404(b)). Ricky complains that such evidence was not relevant to the State's case because the State failed to prove beyond a reasonable doubt that Ricky had any connection to the undergarments and videotape. Absent proof of this connection, Ricky argues that evidence of those items was not relevant, and was therefore inadmissible. *See* TEX.R. EVID. 402. Ricky further claims that the evidence was introduced as character evidence in violation of Texas Rule of Evidence 404(b). He contends that the complained-of evidence did not show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in relation to the charged offenses, the permissible uses for such type of evidence. *See* TEX.R. EVID. 404(b). Alternatively, Ricky argues that even if such evidence was admissible pursuant to Rule 404(b), the trial court erred in admitting it because its probative value was substantially outweighed by the danger of unfair prejudice. *See* TEX.R. EVID. 403. Ricky also claims error in the trial court's refusal to instruct the jury that it could not consider the extraneous offenses offered against Ricky unless it believed beyond a reasonable doubt that he committed them. *See Montgomery v. State*, 810 S.W.2d 372, 388 (Tex.Crim.App. 1990).

■ We review the trial court's ruling under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex.Crim.App.1990). The trial court abuses its discretion when it acts without reference to any guiding rules and princi-

ples, or acts in a manner that is arbitrary or capricious. *Id.*

The State counters that the trial court did not abuse its discretion in admitting the challenged evidence because it was relevant and properly admitted as "same transaction contextual evidence," an exception to Rule 404(b). *See Rogers v. State,* 853 S.W.2d 29, 33 & n. 6 (Tex.Crim.App. 1993); *Mayes v. State,* 816 S.W.2d 79, 84–87 (Tex.Crim.App.1991). And, because same transaction contextual evidence is not offered as evidence against a defendant within the proscription of Rule 404(b), but rather to explain the circumstances of the offense, a reasonable doubt instruction is not required. The State thus asserts that the trial court did not abuse its discretion in failing to include such an instruction. *See Camacho v. State,* 864 S.W.2d 524, 535 (Tex.Crim.App.1993); *Garza v. State,* 2 S.W.3d 331, 335 (Tex.App.-San Antonio 1999, pet. denied). We disagree with the State's characterization of this evidence.

■ "Same transaction contextual evidence" refers to other offenses connected with the primary offense, which is admissible when the evidence is necessary for the State to logically present evidence of the charged offense. *Garza,* 2 S.W.3d at 335. Crimes do not occur in a vacuum, and the State is entitled to prove the circumstances surrounding the crime even though they may seem like irrelevant details. *Id.* Extraneous conduct is properly considered "same transaction contextual evidence" *only when the charged offense would make little or no sense* without also bringing in the extraneous conduct. *See Pondexter v. State,* 942 S.W.2d 577, 583–85 (Tex.Crim.App.1996) (emphasis added); *Mayes,* 816 S.W.2d at 86 n. 4. Stated differently, the conduct must be blended or connected to the act for which the defendant is being tried so that they form an indivisible criminal transaction, such that full proof of one could not be given without showing the other. *Buchanan v. State,* 911 S.W.2d 11, 15 (Tex.Crim.App.1995).

At first blush, the State's position is plausible. The events that may have precipitated Ricky's venture into the living room seem material to the tragic events that unfolded in that room to the extent that they potentially explain Ricky's motive for putting a hunting knife to Hester's throat while she slept. Ricky, however, was not on trial for the assault of Hester. He was on trial only for the aggravated assault of Lee and the murder of Ling. We find that both crimes could have been logically presented to the jury, without risk of confusion or ambiguity, and without mention of items that may have "aroused" Ricky before he entered the living room and threatened Hester. Presumably the jury could also clearly understand the events surrounding the aggravated assault of Lee, which occurred when Ricky was caught in the act of attempting to attack Hester, without learning about evidence of adolescent undergarments and a pornographic videotape found in Ricky's room. Presumably the jury could also clearly understand the events surrounding the stabbing death of Ling, which occurred when he tried to save his wife from Ricky's beating, without learning about evidence of adolescent undergarments and a pornographic videotape found in Ricky's room. The complained-of evidence could serve only to send a message to the jury that Ricky was a pedophile. Under these circumstances, we find that the evidence is not "same transaction contextual evidence," but rather is more properly characterized as impermissible character evidence. *See* TEX.R. EVID. 404(b). Accordingly, we find that the trial court erred in admitting it.

■ We must disregard a nonconstitutional error, such as a violation of an evidentiary rule, that does not affect substantial rights of the defendant. TEX. R.APP. P. 44.2(b); *see Garza v. State,* 963 S.W.2d 926, 929 (Tex.App.-San Antonio 1998, no pet.) (erroneous admission of extraneous offense evidence does not constitute constitutional error). A substantial

right is affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997). Ricky argues that he was harmed by the admission of the extraneous offense evidence because the State used it to prove that he acted with the requisite mental state. *See* TEX. PEN.CODE ANN. § 19.02(b)(1) (Vernon 1994) (person commits offense of murder if he intentionally or knowingly causes death of individual); TEX. PEN.CODE ANN. § 22.02(a)(2) (person commits offense of aggravated assault if he intentionally, knowingly, or recklessly causes bodily injury to another by using or exhibiting deadly weapon during commission of assault). He argues, in essence, that but for the erroneous introduction of the evidence regarding the undergarments and videotape, the State would have been unable to prove that he intentionally caused the death of Ling and intentionally caused bodily injury to Lee. We disagree.

We agree that Ricky has a substantial right to require the State to prove every aspect of its case. We cannot agree, however, that this right was affected by the erroneously introduced extraneous offense evidence. A review of the record shows that, despite the admission of the improper character evidence, the State nevertheless met its burden of proving intent with respect to both charged offenses through independent evidence. With respect to the aggravated assault charge, the jury learned, through uncontradicted, eyewitness testimony, that Lee entered the living room and saw Ricky standing over Hester holding a hunting knife to her throat. When Ricky saw Lee, he charged at her, screamed out an obscenity, and pushed her to the wall. On the ground, Lee felt blood on the back of her neck. Courtney testified that Ricky beat Lee until she collapsed. With respect to the murder charge, the jury learned, through uncontradicted, eyewitness testimony, that once Ling entered the room and attempted to rescue Lee, Ricky turned his aggression towards him. The men briefly struggled

before Ricky stabbed Ling in the chest, delivering a fatal wound. Dr. Suzana Dana, the medical examiner who performed the autopsy of Ling, testified that Ling sustained several superficial wounds on his left hand, left upper arm, and his right leg. The fatal injury was a stab wound to the front part of Ling's chest, approximately four and one half inches deep. Dr. Dana agreed that because the murder weapon was three to four inches in length, Ricky probably exerted "some force" in order to bury the knife that deeply into Ling's chest. Based on this properly admitted evidence, the jury could reasonably infer that Ricky acted with intent to cause serious bodily injury to Lee when he charged at her with a hunting knife and acted with specific intent to cause the death of Ling when he stabbed him. *See Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex.Crim.App.1986) (stating that specific intent to kill may be inferred from use of a deadly weapon, unless in manner of its use it is reasonably apparent that death or serious bodily injury could not result). We are unable to conclude that the erroneously admitted evidence affected Ricky's substantial right to require the State to prove every aspect of its case. *See King*, 953 S.W.2d at 271. Points of error one through four are overruled.

### ORAL STATEMENT

In points of error five through eleven, Ricky complains about the introduction of an oral statement he made to a police officer while en route to the hospital to give a blood sample. Ricky argues that the statement's introduction violates article 38.22, section 3(a) of the Texas Code of Criminal Procedure, the Fifth and Fourteenth Amendments of the United States Constitution, and Article I, sections 13 and 19 of the Texas Constitution because it was made without the benefit of *Miranda*-type protections. We review the trial court's ruling under an abuse of discretion standard. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

The following evidence was introduced at a pre-trial suppression hearing: Ricky was arrested on August 22, 1998. Following his arrest, Ricky was advised of his *Miranda* rights by both the arresting officers and a magistrate. Ricky testified that he understood the warnings. The officers testified that Ricky seemed to understand English despite his heavy Chinese accent; all parties, including Ricky, spoke in English. During the initial interview, Ricky indicated he wanted an attorney. Ricky was told that if he wanted an attorney, the officers could not question him further and that what he said could not be used against him. Ricky made several statements to the officers, none of which were admitted into evidence.

On August 24, 1998, Seguin Police Officer Antonio Leal picked up Ricky at the Seguin Police Department to drive him to the hospital for a blood test pursuant to a search warrant. Officer Leal testified that during their drive, Ricky began to ask questions of him: what they were doing; what was going to happen to him; what was the status of his stepmother. At that point, Officer Leal told Ricky:

> It is okay for us to talk. But if you want to talk, you have asked for an attorney ... You are talking to me now and I haven't asked you any questions. If you wish to continue to talk, you know, let's wait until we finish. We will go back to the P.D. so that we can record it on audio tape or get it down on paper.

According to Officer Leal, Ricky responded:

> No. I just want people to know that I have a great deal of problems with my stepmother, and she hated him and something to the effect about what his father had done to his mother ...

Ricky did not contradict Officer Leal's recollection of this conversation. Ricky indicated, however, he was operating under the assumption that his statements would not be used against him. That is, Ricky believed that such instruction given

to him two days earlier during the initial questioning was still in force.

■ Article 38.22 of the Texas Code of Criminal Procedure and *Miranda* apply only to statements made as a result of custodial interrogation. TEX.CODE CRIM. PROC. art. 38.22 § 5 (Vernon Supp.2000); *see Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). They do not apply to voluntary statements resulting from non-custodial interrogation. *Stone v. State*, 583 S.W.2d 410, 413 (Tex. Crim.App.1979); *Earnhart v. State*, 582 S.W.2d 444, 448 (Tex.Crim.App.1979); *Parra v. State*, 743 S.W.2d 281, 285 (Tex. App.-San Antonio 1987, pet. ref'd). Thus, if Ricky's oral statement did not stem from a custodial interrogation, neither article 38.22 nor *Miranda* requires its suppression.

■ Custodial interrogation occurs when a person in custody is subjected to direct questioning or its functional equivalent, which occurs when police officers engage in conduct that they know is likely to elicit an incriminating response from the defendant. *McCrory v. State*, 643 S.W.2d 725, 734 (Tex.Crim.App.1982); *Kelley*, 817 S.W.2d at 173. Police officers are not accountable for the unforeseeable results of their words or actions. *Innis*, 446 U.S. at 302–03, 100 S.Ct. 1682.

Here, it is undisputed that Ricky was in custody at the time he made his oral statement. The record is equally clear that Ricky's statement was not a product of direct questioning from Officer Leal. From Officer Leal's uncontradicted testimony, the trial court could reasonably believe that Ricky initiated the conversation by asking Officer Leal general questions about his case. From the record, the trial court could also reasonably believe that Ricky blurted out the statement about which he now complains in response to Officer Leal's attempt to change the topic of conversation. Moreover, based on this record, the trial court could reasonably conclude that Officer Leal's conduct was

not the functional equivalent of custodial interrogation. *See Innis*, 446 U.S. at 300, 100 S.Ct. 1682. That is, the record does not demonstrate that Officer Leal's conduct was reasonably likely to elicit an incriminating response from Ricky. *Cf. Jefferson v. State*, 974 S.W.2d 887, 890 (Tex. App.-Austin 1998, no pet.) (holding that officers' use of video camera, even after defendant demonstrated proclivity to speak to camera and make incriminating statements, was not functional equivalent of interrogation). The record, in fact, demonstrates the opposite: Officer Leal attempted to stop the conversation, and in doing so, he recommended that they return to the police station where Ricky could make a statement with the appropriate safeguards. Based on these facts, we conclude that the trial court did not abuse its discretion in admitting into evidence Ricky's volunteered statement, which was fully admissible regardless of the absence of *Miranda*-like protections. Points of error five through eleven are overruled.

## JURY CHARGE ERROR

■ In his final point of error, Ricky argues that the trial court fundamentally erred by instructing the jury "that intent may be inferred from acts done, if any, or words spoken, if any" because such instruction constitutes an impermissible comment on the weight of the evidence in violation of article 36.14 of the Texas Code of Criminal Procedure. He further contends he was harmed by such instruction because it relieved the State of its burden to prove that Ricky acted with the requisite mental state. We agree with Ricky's first-stated contention, but not the second.

■ Although the trier of fact may infer a defendant's culpable mental state from circumstantial evidence such as the defendant's acts, words, or conduct, the trial court may not instruct a jury on such inferences. *See Garcia v. State*, 919 S.W.2d 370, 396 (Tex.Crim.App.1994); *Peterson v. State*, 942 S.W.2d 206, 207–08 (Tex.App.-Texarkana 1997, pet. ref'd); *see*

*also Browning v. State*, 720 S.W.2d 504, 507 (Tex.Crim.App.1986). In *Garcia v. State*, the Texas Court of Criminal Appeals was asked to determine whether an instruction similar to the one in the instant case constituted an impermissible comment on the weight of the evidence. *Garcia*, 919 S.W.2d at 396. There, the trial court instructed the jury that "intent or knowledge may be inferred by acts done or words spoken." *Id.* Without explanation, the Court of Criminal Appeals assumed it was error for the trial court to so instruct the jury, but nevertheless concluded that such error was harmless in light of the overwhelming evidence supporting the jury's conclusion that the defendant acted with intention. *Id.* Following the implicit holding of *Garcia*, we find that the challenged instruction in the instant case constituted an impermissible comment on the weight of the evidence, and therefore, we conclude the trial court erred in submitting it to the jury. *See id.; Peterson*, 942 S.W.2d at 207–08.

■ The standard of review of jury charge error depends upon whether the error was objected to at the trial level. *Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim.App.1998); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). When, as in the instant case, the defendant does not object to the charge, we reverse only if the error caused the defendant egregious harm. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App.1994); *Almanza*, 686 S.W.2d at 171. Egregious harm consists of error affecting the very basis of the case or that deprives the defendant of a valuable right, vitally affects a defensive theory, or makes the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App. 1991).

As noted, Ricky contends he was harmed by the erroneous instruction because it relieved the State of its burden to prove that he acted with the requisite mental state. We disagree with this con-

tention for the same reasons stated in our discussion under points of error one through four. That is, despite the inclusion of the challenged instruction, the State met its burden to show that Ricky acted with the requisite mental state. The record reveals that the jury had before it ample evidence from which it could reasonably conclude that Ricky acted with intention when he charged at both Lee and Ling wielding a knife. Accordingly, we are unable to conclude that the erroneously included jury instruction caused Ricky egregious harm. *See Garcia,* 919 S.W.2d at 396. Point of error number twelve is overruled.

The judgment of the trial court is affirmed.