TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00268-CR






Brian Gattis, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT


NO. 2032572, HONORABLE SAM ROBERTSON, JR., JUDGE PRESIDING 



 



M E M O R A N D U M O P I N I O N




 Brian Gattis appeals from his conviction for aggravated assault. See Tex. Pen. Code
Ann. § 22.02 (West Supp. 2005). (1) After the jury found appellant guilty, it assessed punishment at
seven years' imprisonment. Appellant brings one issue on appeal, contending that the trial court
committed reversible error by admitting evidence of an extraneous offense.


Background



 Around 9:00 p.m. on July 3, 2003, Gary Abbott and his wife Stephanie were traveling
from Austin to Lake Buchanan. From Slaughter Lane, they entered an I-35 entrance ramp heading
north. Stephanie, the driver, noticed a 1980s blue Volvo station wagon following closely. As they
entered the freeway, the Volvo passed between the Abbotts' car and another car in the next lane,
traveling along the center line between the lanes. Stephanie flashed her car's lights at the Volvo
driver and the other driver honked the horn. The Volvo moved into the right lane, started going
faster, and almost veered off the road twice. Gary thought the Volvo's driver was probably drunk. 
Stephanie drove close enough to the Volvo for Gary to see the license plate number so that she could 
call 911.

 As he was doing so, the Volvo driver slammed on its brakes and veered back toward
the Abbotts. The driver leaned out the window and "shot the finger" at the Abbotts, then pulled into
the center lane behind them, approaching so close to their car's rear bumper that they could no longer
see the Volvo's headlights in their rearview mirror. Although Stephanie attempted to exit the
freeway at the William Cannon exit, the volume of traffic prevented her from so doing. Meanwhile,
the Volvo driver pulled to their left and began swerving his vehicle at them. Mr. Abbott said that
the Volvo's driver appeared angry and was screaming something at them while he "shot the finger"
again. On the third swerve, the Volvo hit the Abbotts' car, causing their outside mirror to break the
Volvo's rear passenger-side window. The Abbotts' red Chevy Cavalier sustained damage to its side.

 Shaken, the Abbotts pulled over to the shoulder of I-35. The Volvo pulled over about
100 yards in front of them. Gary again tried to call 911. After the operator answered, he began
explaining what happened. While he was on the telephone, the Volvo left the scene and re-entered
I-35. The Abbotts pulled into a parking lot to wait for the police.

 Roseanne Castillo had just entered I-35 at William Cannon and was heading north
in her maroon F-150 pickup truck when she witnessed a blue station wagon running a red car off the
road. She honked at the blue car and began searching for her cell phone to call 911. The red and
blue cars both pulled over to the side of the road while she continued north. About a mile up the
road, Castillo saw the same blue car behind her, approaching rapidly. It bumped the back of her
truck twice, then cut off the vehicle next to her so it could pull up beside her truck. The driver was
shaking his head and leaning out the window yelling at her. Coincidentally, Roseanne's brother
Abdias Castillo was driving home from Schlitterbahn that evening and saw appellant's Volvo
bumping the back of his sister's truck. He began honking at the Volvo and motioning at the driver. 
Abdias exited the freeway at the Ben White exit. Although the Volvo had nearly passed the exit, it
made a sharp turn, cut over to the exit ramp, and followed Abdias off the highway. Meanwhile,
Roseanne had called 911 to report these events.

 After exiting, Abdias pulled into a hotel parking lot with the Volvo following him. 
Abdias left his car and waved at appellant. Appellant then "gunned his car" and drove straight
toward Abdias, who was standing at the back of his green Dodge Neon. Appellant's car did not hit
him but hit the Neon, causing damage to the bumper, taillight, and door. Abidas's wife was still
inside the car and was upset but physically unharmed. Abdias called 911. Appellant left the scene.

 On that same evening, Kerry Spear left work, heading north on Meinardus just before
its intersection with St. Elmo. He saw a dark-colored car sideswipe a motorcycle, knocking the rider
off the motorcycle. (2) The motorcyclist started running away and yelled to Spear to "call the law." (3) 
Spear called 911. Sylvia Casiano described seeing a dark-colored car, which she described as an
older model Volkswagon, driving rapidly and making an unusually wide turn out of a parking lot
when it "swiped" the motorcycle.

 Officer Scott Lando was dispatched to the scene of the motorcycle accident. He
interviewed the witnesses at the scene. The motorcycle was lying in the middle of the intersection
of St. Elmo and Meinardus and was badly damaged. The blue car had left the scene. Based on the
information from the witnesses at the scene and the information provided by officers investigating
the other emergency calls made that evening, Officer Lando believed the blue car that hit the
motorcycle was the same vehicle involved in the other collisions.

 Officer Dallas Goodman also responded to the motorcycle scene, then, shortly after
arriving there, received a call to go to the location of the Neon, which was "right up the road" in a
motel complex. He observed the damage to the Neon and Roseanne's truck. He went back to the
motorcycle's location where he received a call that officers had located the blue Volvo and arrested
the driver. Goodman went to that location and observed a vehicle that matched the description given
by the witnesses at the scene of the motorcycle accident.

 Officer Michael Bacon initially discovered and apprehended appellant near East
Riverside and Ben White. When Bacon first saw appellant, he was slumped over the steering wheel
of the blue Volvo, which had sustained collision damage. The appellant then got out of the car.
Bacon thought that appellant was highly intoxicated. Appellant was banging his head and kicking
the door of the squad car after his arrest; restraints had to be placed on his legs, and the officers used
a short blast of pepper spray at one point to subdue him.

 Gary was asked to come to the location of appellant's arrest. He identified appellant's
blue Volvo as the car that sideswiped his car and appellant as the driver of that car.

 Appellant testified in his own defense. He said that he had been celebrating his new
job by drinking with his new boss. He had four or five vodkas, then left to drive himself home. He
admitted he was drunk and was not wearing his prescription glasses as called for in his license
restriction. He said he was having trouble with a bald tire, causing his car to veer to the right, and
said that the car was stalling occasionally. He remembered hitting the Abbotts' red car but claimed
it was unintentional. He did not remember being belligerent, denying that he wore glasses, or telling
the police that he had not been involved in a collision. Appellant conceded that he had a criminal
history including assault, bodily injury, resisting arrest, family violence, violation of a protective
order, and DWI.


Discussion



 In his only issue, appellant contends that the trial court erred in admitting the evidence
concerning the collision with the motorcycle in violation of Texas Rules of Evidence 402, 403, and
404(b) as an extraneous offense. The State responds that the motorcycle collision was admissible
to show a continuing course of conduct that rebutted appellant's defensive theory of accident.


Extraneous Offenses

 A defendant may not be tried for collateral crimes or for being a criminal generally. 
Tex. R. Evid. 404(b); (4) Nobles v. State, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992); Jones v. State,
119 S.W.3d 412, 418 (Tex. App.--Fort Worth 2003, no pet.). Therefore, extraneous offenses are
not admissible at the guilt-innocence phase of trial to prove that a defendant acted in conformity with
his character by committing the charged offense. Rule 404(b); Jones, 119 S.W.3d at 418-19.

 However, an extraneous offense that tends to make an elemental or evidentiary fact
more or less probable or tends to rebut a defensive theory has relevance beyond the tendency to
prove a person's character. Montgomery v. State, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990);
Johnson v. State, 932 S.W.2d 296, 301 (Tex. App.--Austin 1996, pet. ref'd). Evidence of other
crimes or misconduct may be admissible to prove motive, opportunity, intent, preparation, plan,
knowledge, absence of mistake or accident, or to rebut a defensive theory. Rule 404(b); Johnston
v. State, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004); Powell v. State, 63 S.W.3d 435, 438 (Tex.
Crim. App. 2001). The list of exceptions in Rule 404(b) is neither mutually exclusive nor
exhaustive. See Johnston, 145 S.W.3d at 219; Pondexter v. State, 942 S.W.2d 577, 583-84 (Tex.
Crim. App. 1996).

 "Same transaction contextual evidence" may be admissible if several crimes are
intermixed, blended with one another, or connected so that they form an indivisible criminal
transaction, and full proof of any one of them cannot be given without showing the others. Wyatt
v. State, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000); Rogers v. State, 853 S.W.2d 29, 33 (Tex. Crim.
App. 1993). An offense is not tried in a vacuum. Moreno v. State, 721 S.W.2d 295, 301 (Tex. Crim.
App. 1986). The jury is entitled to know all relevant surrounding facts and circumstances of the
charged offense. Id.

 Same transaction contextual evidence is admissible, however, only if the offense
would make little or no sense without bringing in that evidence. Wyatt, 23 S.W.3d at 25. The
conduct must be blended or connected to the act for which the defendant is being tried so that they
form an indivisible criminal transaction, such that full proof of one could not be given without
showing the other. See Buchanan v. State, 911 S.W.2d 11, 15 (Tex. Crim. App. 1995) (citing Mayes
v. State, 816 S.W.2d 79, 86 n.4 (Tex. Crim. App. 1991)); Lam v. State, 25 S.W.3d 233, 237 (Tex.
App.--San Antonio 2000, no pet.).

 The State, as the proponent of extraneous offense evidence, bears the initial burden
of showing admissibility. See Rankin v. State, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996). The
court's task is then to determine whether extraneous offense evidence is relevant for a purpose other
than the propensity of the defendant to commit crimes or other bad acts. Jones, 119 S.W.3d at 419. 
The trial court's ruling on relevance will be reviewed for an abuse of discretion. Moreno v. State,
858 S.W.2d 453, 463 (Tex. Crim. App. 1993); Corley v. State, 987 S.W.2d 615, 618 (Tex.
App.--Austin 1999, no pet.). Appellate courts should give great discretion to trial courts in
evidentiary rulings, reversing only if the trial court acts outside "the zone of reasonable
disagreement." Montgomery, 810 S.W.2d at 391.

 If a trial court determines that evidence of other crimes or extraneous misconduct has
relevance aside from character conformity, and a timely, proper Rule 403 objection is made, the trial
court must make the balancing determination called for in Rule 403. Montgomery, 810 S.W.2d at
388-89. Under Rule 403 relevant evidence may nevertheless be excluded if its probative value is
substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading
the jury, or by considerations of undue delay or needless presentation of cumulative evidence. Rule
403. Only "unfair" prejudice provides the basis for exclusion of relevant evidence. Montgomery,
810 S.W.2d at 389. Unfair prejudice arises from evidence that has an undue tendency to suggest that
a decision be made on an improper basis, commonly an emotional one. Id. In evaluating the trial
court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment
"rarely and only after a clear abuse of discretion," recognizing that the trial court is in a superior
position to gauge the impact of the relevant evidence. Mozon v. State, 991 S.W.2d 841, 847 (Tex.
Crim. App. 1999) (citing Montgomery, 810 S.W.2d at 389).

 When assessing the trial court's balancing determination, the appellate court
considers: (1) how compellingly the extraneous offense evidence serves to make a fact of
consequence more or less probable--a factor which is related to the strength of the evidence
presented by the proponent to show the defendant in fact committed the extraneous offense; (2) the
potential the extraneous offense evidence has to impress the jury in a rational but indelible way; (3)
the time the proponent will need to develop the evidence, during which the jury will be distracted
from consideration of the indicted offense; and (4) the force of the proponent's need for this evidence
to prove a fact of consequence. Id.


Application


 Appellant argues that the evidence concerning the motorcycle accident should have
been excluded as extraneous offense evidence because there was not adequate identification of
appellant or his vehicle in connection with that accident. The State's theory of admissibility in this
case is that appellant was involved in three similar accidents in a short time frame within a close
geographical location. Therefore, the evidence about the motorcycle accident acted to rebut
appellant's defense of accident or mistake, that is, he was intoxicated but had no intent to harm.

 We first observe that this evidence is not the kind that has an undue tendency to
suggest that a decision be made on an improper basis as highly emotional evidence. See Montgmery,
810 S.W.2d at 389. No deaths resulted from the motorcycle accident; in fact, the motorcyclist
walked away and it was later discovered he was on a motorcycle that had been "hotwired" and
reported stolen.

 The three incidents occurred in a short period of time. Goodman had just arrived at
the motorcycle hit-and-run scene when he received a call to go to the nearby parking lot where the
appellant had already smashed into the Neon. The location and timing of the motorcycle wreck
logically appeared to be a continuation of a sequence of events that started at I-35 and Slaughter Lane
and ended at Ben White and Riverside. Goodman had just returned to the location of the motorcycle
accident when he received a call notifying him that the blue Volvo had been located and appellant
apprehended. All three accidents involved many similarities. An older model blue European car
driving aggressively and recklessly appeared, without provocation, intentionally to collide with
another vehicle and then left the scene. The Abbotts and the Castillos described appellant's
demeanor as angry; he "shot the finger" and was yelling.

 The facts concerning the motorcycle accident were relevant to the issue of appellant's
intent, specifically to rebut his contention of mistake or accident. Appellant claimed his reckless
driving was the product of intoxication, failure to wear glasses, and mechanical problems with his
vehicle. The motorcycle accident evidence, when combined with the other evidence admitted at trial,
rebutted this defense by showing a pattern of behavior during the course of what was essentially a
single event or transaction. Further, as some of the same officers went from scene to scene, it would
have been difficult to describe completely the automobile accidents without describing the
motorcycle accident.

 Appellant complains that the evidence linking him to the motorcycle accident was
weak. The strength or weakness of the identification is but one factor in the balancing analysis, to
which we now turn.

 One factor in the analysis is how compellingly the extraneous offense evidence serves
to make a fact of consequence more or less probable, a factor which is related to the strength of the
evidence presented by the proponent to show the defendant in fact committed the extraneous offense. 
See Mozon, 991 S.W.2d at 847. In this case, weaknesses in the evidence presented by the State, such
as one witness's description of the car as a "Volkswagen" rather than a Volvo, go to the strength of
the State's evidence. The similarities in the description of the car as a dark blue foreign car and the
closeness in time and location are all factors to be weighed. This factor appears neutral.

 Another factor is the potential the offense evidence has to impress the jury in some
irrational but nevertheless indelible way. Id. This factor weighs in favor of admission. The
motorcycle wreck was simply one of three wrecks that were investigated at more or less the same
time and were all part of a continuous event. As noted above, there was nothing particularly
emotion-inducing about the evidence concerning the motorcycle wreck that would unfairly impress
the jury.

 The third factor is the time the proponent will need to develop the evidence, during
which time the jury will be distracted from consideration of the indicted evidence. Id. This factor
also weighs in favor of admission. The investigation of, and thus the testimony about, the three
incidents was intertwined, as one officer was going back and forth between locations.

 The fourth factor is the force of the proponent's need for the evidence to prove a fact
of consequence, i.e., does the proponent have other probative evidence available to him to help
establish this fact. Id. The factor weighs somewhat against the admission of the evidence in that
there was direct testimony going to appellant's intent; that is, the testimony that he appeared angry,
was yelling, and was making obscene gestures.

 Based on our review of the factors, we cannot say that the trial court abused its
discretion in admitting the evidence of the motorcycle accident. See Mozon, 991 S.W.2d at 847. We
overrule appellant's only issue.


Conclusion


 We have overruled appellant's only issue and affirm the trial court's judgment. 



 __________________________________________

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear


Affirmed


Filed: June 29, 2006


Do Not Publish
1. Appellant was indicted for intentionally and knowingly threatening Gary Abbott with imminent
bodily injury and using a deadly weapon, a vehicle.
2. The time sequence was not entirely clear. Testimony described the area of the motorcycle crash
as being close to the strip of hotels running from the 4600 to the 4000 blocks of I-35 and the
Meinardus-St. Elmo intersection as being about a block from the frontage road in this area and just
south of Ben White. It appears most logical that appellant left the freeway, followed Abdias into a
hotel parking lot, then left that lot and encountered the cyclist before fleeing that scene and being
apprehended at Ben White and Riverside. It appears that the police investigated all of the incidents
at more or less the same time.
3. The motorcycle was later determined to be stolen.
4. Hereafter, in both text and footnotes, the Texas Rules of Evidence will be cited as Rule .