Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

## MEMORANDUM OPINION

No. 04-08-00723-CR

Leon Davis **LITTLE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-8672
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:  Catherine Stone, Chief Justice

Sitting:  Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  September 9, 2009

AFFIRMED

Leon Davis Little was indicted on thirteen counts of indecency with a child by contact and

aggravated sexual assault.  A jury returned a verdict of guilty on all thirteen counts.  The trial court

found the enhancement paragraphs to be true, and assessed punishment of life on each count, to run

concurrently.  Little appeals his conviction, arguing the trial court erred in: 1) admitting inadmissible

hearsay evidence; 2) failing to qualify a witness as an expert; and 3) admitting Little's DVD statement made to a polygraph examiner. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

S.E. spent most of her childhood living with her father and her paternal grandmother, who died when S.E. was ten. After her grandmother's death, S.E. began spending time at the home of John Welch, an elderly neighbor who took good care of S.E.

When S.E. was thirteen, appellant Leon Little moved into Welch's house. S.E. testified that a few weeks after he moved in, Little began sexually abusing S.E. whenever Welch was gone or asleep. Little first began touching her breasts and vaginal area on the outside of her clothing, and later began touching S.E.'s breasts and vagina under her clothes, and inserting his fingers in her. Little eventually put his penis in S.E., performed oral sex on her, and had her perform oral sex on him. S.E. stated that the abuse occurred every day after school, but she did not tell anyone because she did not think they would believe her.

One day while Little was sexually assaulting S.E., her cousins knocked on the door of Welch's home. S.E. put on her shirt to answer the door, but buttoned her shirt incorrectly. Her cousins left, then came back and told S.E. she needed to go with them to her aunt's house. When she got there, her aunt and cousins confronted her about what was going on; S.E. told them what was happening. Her aunt called the police. After S.E. spoke with police, she was taken to the hospital and examined by a Sexual Assault Nurse Examiner (SANE).

Little was arrested and indicted on thirteen counts of indecency with a child by contact and aggravated sexual assault. The jury returned a verdict of guilty on all thirteen counts, and the trial

court found the enhancement paragraphs to be true and assessed punishment of concurrent life sentences on each count. This appeal followed.

## HEARSAY EXCEPTION

In his first issue, Little argues the trial court erred in admitting inadmissible hearsay from the SANE, Betty Mercer, into evidence. The State introduced Mercer's notes from her examination of S.E. through a custodian of records at the hospital where S.E. was examined. In addition, Mercer read to the jury statements made by S.E. about the sexual assaults.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). A trial court abuses its discretion when its determination of evidentiary admissibility falls outside the zone of reasonable disagreement. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008).

A statement made for purposes of medical diagnosis or treatment in which the patient describes medical history related to past or present symptoms and the cause or source thereof, if reasonably pertinent to diagnosis or treatment, is an exception to the hearsay rule. TEX. R. EVID. 803(4). This hearsay exception is based on the idea that a patient understands the importance of being truthful with medical personnel in order to receive an accurate diagnosis and treatment. Additionally, this court recently noted that:

> Statements by a suspected victim of child abuse about the cause and source of the child's injuries are admissible under an exception to the rule against hearsay pursuant to Texas Rules of Evidence 803(4), which provides an exception to the hearsay rule for '[s]tatements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.' To qualify for this exception, the suspected child abuse victim must understand the importance of being truthful with medical personnel. Courts should therefore consider whether the child had an

> appreciation for why the statements were made when determining the applicability of this hearsay exception.

*Constance v. State*, No. 04-08-00326-CR, 2009 WL 1477791, *4 (Tex. App.—San Antonio May 27, 2009, no pet.) (mem. op., not designated for publication) (internal citations omitted). To determine whether a child understands the importance of truthfulness when speaking to medical personnel, the reviewing court looks to the entire record. *See Green v. State*, 191 S.W.3d 888, 896 (Tex. App.—Houston [14 Dist.] 2006, pet. ref'd).

Little argues there is no evidence S.E. understood the importance of being truthful when describing the sexual assaults to Mercer, and consequently the statements served only to bolster S.E.'s testimony. We disagree. The record shows that when S.E. met with medical personnel following her outcry, she acknowledged she was there "because of Leon . . . . he raped [S.E.]." She also acknowledged to Mercer that Leon told S.E. "he was going to get [her] protection because he did not want to go to jail by . . . getting [S.E.] pregnant." Additionally, S.E. testified she had been afraid to tell anyone about the abuse because she knew her father would blame her and hit her when he found out; nevertheless, she made the decision to talk to her family and Mercer about the sexual assaults. The examination took place in a hospital, Mercer identified herself as a nurse, and Mercer believed she told S.E. that she was there for diagnosis and treatment. Reviewing the entire record, we conclude the evidence is sufficient to support a finding that S.E., who was thirteen at the time of the assaults, understood the need to be truthful. Accordingly, we conclude the statements contained within Mercer's written notes, as well as her testimony at trial, comply with Rule 803(4). Accordingly, we hold the trial court did not abuse its discretion in admitting the evidence. Little's first issue is overruled.

### EXPERT TESTIMONY

In his second issue, Little complains the trial court erred in allowing Dr. Nancy Kellogg to give opinion testimony without qualifying her as an expert witness. During trial, Dr. Kellogg testified that 90 percent of children and teenagers who have been sexually abused have normal or non-specific sexual assault exams. She also offered opinion testimony about why children may not disclose sexual abuse. Little contends the State never qualified Dr. Kellogg as an expert as to these two statements. We disagree.

The burden of establishing that a witness is qualified as an expert is on the offering party. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). "The question of whether a witness offered as an expert possesses the required qualifications rests largely in the trial court's discretion. Absent a clear abuse of that discretion, the trial court's decision to admit or exclude testimony will not be disturbed." *Id.* The trial court abuses its discretion if it acts without reference to any guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). Thus, we will uphold the trial court's decision as long as it is within the zone of reasonable disagreement. *Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002).

The Texas Rules of Evidence provide three separate stipulations regarding admissibility of expert testimony. *Vela v. State*, 209 S.W.3d 128, 130 (Tex. Crim. App. 2006). First, Rule 104(a) requires the court to address "[p]reliminary questions concerning the qualification of a person to be a witness . . . ." TEX. R. EVID. 104(a). Second, Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. Finally, Rules 401 and

402 provide testimony is admissible only if it "tend[s] to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401, 402.

Based on the above, the trial court must make three distinct determinations when discerning whether expert testimony is admissible: 1) the witness must qualify as an expert by reason of knowledge, skill, experience, training, or education; 2) the subject matter of the testimony must be an appropriate one for expert testimony; and 3) admitting the expert testimony must actually assist the fact-finder in deciding the case. *Vela*, 209 S.W.3d at 131 (*quoting Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006)). These factors are commonly referred to as 1) qualification, 2) reliability, and 3) relevance. *Id.*

Little challenges Dr. Kellogg's qualifications, arguing the trial court never pronounced her qualified to testify as an expert witness. Review of the record reveals Dr. Kellogg's extensive background in the field of child abuse. Dr. Kellogg is a professor of pediatrics at the University of Texas Health Science Center Medical School. Since 1988, she has worked in the Department of Pediatrics in the area of child abuse, both physical and sexual. In that capacity, she teaches other professionals about the topic, publishes articles related to the topic, and examines patients. In addition to her professorship, Dr. Kellogg also works for Child Safe, where she examines and assists suspected victims of child and adolescent sexual abuse. Finally, she also works for the Center for Miracles at Christus Santa Rosa Children's Hospital, where she sees children who are suspected victims of physical abuse and neglect.

Little cites nothing in the record that would support an argument disqualifying Dr. Kellogg's testimony. While the trial court never explicitly pronounced Dr. Kellogg was a qualified expert

witness, it impliedly did so when it overruled Little's objection that the State did not lay the proper predicate regarding Dr. Kellogg's expertise. Dr. Kellogg testified that during her years of practice, she has performed more than 8,500 examinations of suspected victims of childhood and adolescent abuse. She supported her testimony regarding sexual assault exams with information garnered from her years of experience, as well as peer-reviewed articles. Based on the above, the trial court did not abuse its discretion in finding Dr. Kellogg qualified as an expert based on her knowledge, skill, experience, training, and education. *See Vela*, 209 S.W.3d at 131. Little's second issue is overruled.

### RECORDED STATEMENT

In his third issue, Little contends the trial court erred in admitting the DVD of an oral statement given by Little in preparation for a polygraph examination. Little argues he was in custody at the time he gave the statement, and therefore article 38.22 of the Texas Code of Criminal Procedure required the exclusion of his statement at trial. We review a trial court's ruling on a motion to suppress for an abuse of discretion, affording almost total deference to the trial court's determination of historical facts that the record supports, especially when based on an evaluation of the witness's credibility and demeanor, but reviewing *de novo* the court's application of the law to the facts. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); *Dossett v. State*, 216 S.W.3d 7, 23 (Tex. App.— San Antonio 2006, pet. ref'd).

It is well settled that the issuance of a defendant's *Miranda* rights and the protections of article 38.22 of the Code of Criminal Procedure do not apply to statements made during non-custodial interrogations. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 5 (Vernon 2005); *Stone v. State*, 583 S.W.2d 410, 413 (Tex. Crim. App. 1979). These rights and protections do not apply to voluntary statements resulting from non-custodial interrogation. *Lam v. State*, 25 S.W.3d 233,

239 (Tex. App.—San Antonio 2000, no pet.).  Custodial interrogation is questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of his freedom in any significant way.  *Cannon v. State*, 691 S.W.2d 664, 671 (Tex. Crim. App. 1985).

The issue at hand is whether polygraph examiner Charles Speagle was acting as an agent of law enforcement when he questioned Little.  The Texas Court of Criminal Appeals has held that only when a non-law enforcement state agent is acting in tandem with police to investigate and gather evidence for a criminal prosecution are *Miranda* warnings required. *Wilkerson v. State*, 173 S.W.3d 521, 523 (Tex. Crim. App. 2005).  The court stated the following:

> Of course, *Miranda* does not apply to all custodial questioning. It generally applies only to questioning by law enforcement officers or their agents.  There are two types of "state agents":  all those who are employed by any state agency are, by definition, "state agents," but only those who are working for or on behalf of police are law-enforcement "state agents."  Although state employment clearly makes a person an "agent of the State," that label does not, by itself, make the person an "agent of the State" for the purpose of defining "custodial interrogation."  Not all government workers must be familiar with and ready to administer *Miranda* warnings or comply with the procedural requirements of Article 38.22.  As noted by Professor LaFave, when "the official has not been given police powers, *Miranda* has been held inapplicable to questioning by school officials, welfare investigators, medical personnel, prison counselors, and parole or probation officers."

*Id.* at 527-28 (*citing Paez v. State*, 681 S.W.2d 34, 37 (Tex. Crim. App. 1984); *see* 2 W. LAFAVE & J. ISREAL, CRIMINAL PROCEDURE § 6.10(c) at 622 (1991 Supp.)).  Ultimately, the inquiry is "whether the custodial interview [was] conducted (explicitly or implicitly) on behalf of the police for the primary purpose of gathering evidence or statements to be used in a later criminal proceeding against the interviewee." *Wilkerson*, 173 S.W.3d at 531.

The trial court conducted a motion to suppress hearing at which parole officer Regina Nerio and Speagle testified.  Nerio stated that the conditions for Little's parole included consent to periodic polygraph testing, and Little signed a form acknowledging this condition.  Nerio testified that Little

came to the facility for the polygraph test on his own, and was not restrained in any way. Nerio stated she was not under direction by law enforcement or anyone investigating the instant case or any other case involving Little. Several other parolees were tested on the same day.

Speagle testified that he did not work for Nerio or the state; he was employed by a private company. Speagle related Little was given a health questionnaire and consent form, which he reviewed and signed in the interview room prior to questioning. Speagle reviewed the form with Little, which provided warnings that Little could consult an attorney prior to or during any questioning about unadjudicated offenses, and that he could remain silent and at any time stop the test. Before administering polygraph tests, the parole office provides the examiner with a packet of information regarding the parolee; Little's packet included a police report concerning Little's interaction with S.E. During the pre-interview, conducted before the actual polygraph test, Speagle asked Little questions about the specific offense involving S.E. Little initially was reluctant to talk about the offense, telling Speagle he would not answer questions about the incident; however, Speagle continued to ask questions, and Little eventually talked about the offense with Speagle. Consequently, the interview was terminated and the polygraph test was never administered as Little had confessed to having sexual contact with a minor.

Because of the trial court's unique ability to judge the demeanor of the witnesses, we give great deference to its findings of fact, including a finding of whether custodial interrogation occurred. *See Garza v. State*, 34 S.W.3d 591, 593 (Tex. App.—San Antonio 2000, pet. ref'd). The trial court heard the testimony from Nerio and Speagle, and was unconvinced Little's pre-interview conducted prior to a scheduled polygraph test constituted custodial interrogation. The evidence presented does not support the conclusion that Speagle was acting in tandem with police officers

when he interviewed Little during the pre-interview.  Consequently, the trial court did not abuse its discretion in admitting Little's statement. *See Wilkerson*, 173 S.W.3d at 523-24.  Little's third issue is overruled.

## CONCLUSION

The trial court did not abuse its discretion in admitting the SANE nurse's medical report testimony, nor did it err in admitting the DVD of Little's statement taken prior to a scheduled polygraph examination.  In addition, the trial court did not abuse its discretion in allowing Dr. Kellogg to testify as an expert witness.   Accordingly, the trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH