

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00548-CR
No. 04-14-00549-CR

Leopoldo **CORTEZ-LEIJA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kendall County, Texas
Trial Court Nos. 5437 and 5438
Honorable N. Keith Williams, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:          Rebeca C. Martinez, Justice
                  Patricia O. Alvarez, Justice
                  Luz Elena D. Chapa, Justice

Delivered and Filed:  September 23, 2015

AFFIRMED

Leopoldo Cortez-Leija appeals his convictions for sexual assault of a child and continuous sexual assault of a child. Cortez-Leija argues the trial court committed harmful error by admitting evidence of prior unadjudicated criminal offenses during the guilt-innocence phase of the trial. We affirm.

**BACKGROUND**

Maria G., the mother of complainants "Susanna" and "Rosa,"[1] met Cortez-Leija in Mexico in 1995. She and her children lived with Cortez-Leija in Mexico, and they eventually moved to Boerne, Texas. Susanna, the older daughter, is Cortez-Leija's stepdaughter and Rosa, the younger daughter, is Cortez-Leija's biological daughter. Susanna gave birth to a son and DNA testing confirmed Cortez-Leija was the boy's biological father. Susanna and Rosa's sister-in-law reported allegations of sexual abuse to the authorities.

Cortez-Leija was indicted on two counts of sexual assault of a child, Susanna, and of continuous sexual assault of a child, Rosa. At trial, Susanna and Rosa's brother, Pedro, testified he visited his mother and family at their home in Boerne around Christmas of 2009. Pedro testified he overheard noises from the next bedroom that sounded like Cortez-Leija and Susanna whispering, kissing, and having sex. On cross-examination, Cortez-Leija's counsel asked Pedro whether he had ever reported the incident to the authorities, and Pedro responded he had not.

The State introduced evidence of Cortez-Leija's past conduct to explain why Pedro did not report the incident. The trial court overruled Cortez-Leija's Rule 404(b) objection and permitted Pedro to testify about when Cortez-Leija shot Maria in the foot, and physically abused him, Maria, and Pedro's brother. During his testimony, Pedro referred to Cortez-Leija as "that monster."

Susanna testified Cortez-Leija sexually abused her for years, starting in Mexico when she was eight years old. She testified that when she was thirteen, she became pregnant and gave birth to a child fathered by Cortez-Leija. Susanna also testified she witnessed Cortez-Leija shoot Maria in the foot. Rosa testified Cortez-Leija sexually abused her over a lengthy period of time after they had moved to Boerne.

---

[1] To protect the privacy of the victims, we use the pseudonyms used in the indictments.

The jury found Cortez-Leija guilty of all charges and assessed punishment at twenty years' confinement and a $10,000 fine as to each of the two counts of sexual assault of a child, and life imprisonment without the possibility of parole for continuous sexual assault of a child. Cortez-Leija now appeals.

## DISCUSSION

Cortez-Leija argues the trial court erred by admitting evidence of his unadjudicated extraneous offenses including "shooting his wife in the foot" and "horse-whip[ping] his stepsons, chain[ing] them to trees and brandish[ing] and threaten[ing] people with weapons." We review the trial court's rulings on the admissibility of extraneous offenses for an abuse of discretion. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). We will uphold the trial court's decision so long as its rulings are within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

The improper admission of unadjudicated extraneous offense evidence is non-constitutional error subject to a harm analysis. *Lam v. State*, 25 S.W.3d 233, 237 (Tex. App.—San Antonio 2000, no pet.). Any non-constitutional "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). An error affects a substantial right of the defendant when the error has a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Non-constitutional error is not grounds for reversal if, "after examining the record as a whole," there is "fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (internal quotation marks omitted). In assessing the likelihood that the jury's decision was adversely affected by the error, we "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might

be considered in connection with other evidence in the case." *Id.* We may also consider, in conducting a harm analysis, the presence of overwhelming evidence of guilt. *Id.* at 356-57.

Here, even if we were to assume the trial court erred by admitting the extraneous offense evidence, the error was harmless. Susanna identified Cortez-Leija as her step-dad and testified he started having inappropriate sexual contact with her when she was only eight years old. She testified she remembered the first time Cortez-Leija had inappropriate sexual contact with her and recounted the details for the jury. Susanna stated Cortez-Leija threatened to kill her or her mother if she screamed or told anyone about it.

Susanna further testified Cortez-Leija continued to have inappropriate sexual contact with her until after she turned sixteen years old. She explained Cortez-Leija "penetrated [her vagina] with his penis" approximately eight times a month until the end of 2009. Susanna also testified Cortez-Leija "penetrated [her] vagina with his tongue." Susanna testified she got pregnant at thirteen years old and Cortez-Leija was the only person with whom she had sexual intercourse. The trial court admitted DNA evidence confirming Cortez-Leija was the father of the child born to Susanna. Cortez-Leija does not dispute this fact.

Rosa identified Cortez-Leija as her father and testified he first started having inappropriate sexual contact with her when they were living in Mexico. She testified the first time he had sexual contact with her, he touched the inside of her vagina with his fingers, mouth, and penis, and he touched her breast. Rosa stated that this would occur "most weekends" and that he continued to touch her inappropriately after they moved to Boerne, Texas. She further testified that he inappropriately touched her while in her mother's room and in his vehicle when he would take her to the bus stop. Rosa confirmed Cortez-Leija inappropriately touched the inside of her vagina with his fingers, mouth, and penis, at least two or three times a month from January 2010 to November

2011. She also stated Cortez-Leija put his penis inside her mouth when he took her to the bus stop three to four times a month, and he made her grab his penis with her hands and "masturbate him."

In addition to evidence supporting the jury's verdict, the trial court instructed the jury it could consider the extraneous offense evidence only "in determining the state of mind of the witness and the intent of the defendant, if any, in connection with the offense . . . alleged against him in the indictment in this case and for no other purpose." We presume that the jury followed this instruction. *See Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996); *see also Jackson v. State*, No. 02-11-00414-CR, 2012 WL 6049074, at *6 (Tex. App.—Fort Worth Dec. 6, 2012, pet. ref'd) (mem. op., not designated for publication) (mentioning instruction to limit consideration of extraneous offense evidence, and presumption that jury follows the trial court's instructions, as reason why any error in admitting the evidence was not harmful).

Cortez-Leija argues although the State presented Pedro's testimony about Cortez-Leija shooting Maria and physically abusing his stepsons to establish why the witnesses did not report Cortez-Leija sooner, "the State presented no testimony or other evidence to support this theory. The State's assertion that [Cortez-Leija]'s previous bad acts motivated the witnesses to remain silent is mere speculation." Pedro, however, specifically testified he did nothing to stop Cortez-Leija and did not report the sexual abuse to the police because "he did not want to cause any big problems." Pedro elaborated by describing the incident when Cortez-Leija shot his mother in the foot. Thus, the record does not support Cortez-Leija's assertion that the State did not offer the extraneous offense evidence to explain the delay in reporting Cortez-Leija to the authorities.

Having reviewed the record, we cannot say the trial court's admission of extraneous offense evidence, including Cortez-Leija's shooting his wife in the foot, the physical abuse of his stepsons, and brandishing of weapons, had any more than a slight effect upon the jury. Therefore,

even if the trial court erred by admitting the extraneous offense evidence, the error was not harmful and did not affect Cortez-Leija's substantial rights.

## CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH