Carmen GARZA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–98–00386–CR.

Court of Appeals of Texas, San Antonio.

May 12, 1999.

Discretionary Review Refused Nov. 3, 1999.

---

Alex J. Scharff, Campion & Campion, San Antonio, for appellant.

Barbara Hervey, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

Carmen Garza ("Carmen") pled guilty before a jury and was convicted of intoxication manslaughter. The jury assessed punishment at twenty years confinement. In three points of error, Carmen asserts: (1) the trial court reversibly erred in failing to properly admonish her; (2) the trial court reversibly erred in failing to give a reasonable doubt instruction during the punishment phase of the trial; and (3) she received ineffective assistance of counsel. We overrule these contentions and affirm the trial court's judgment.

### FAILURE TO ADMONISH

In her first point of error, Carmen contends the trial court reversibly erred by failing to admonish her concerning the deportation consequences of her plea in accordance with article 26.13(a) of the Texas Code of Criminal Procedure. The State concedes that no admonishment was given regarding deportation; however, the State asserts that Carmen has failed to

show that the absence of the admonishment resulted in harm or caused her plea to be involuntary.[1]

In *Carranza v. State*, the Texas Court of Criminal Appeals clarified that a trial court errs when it wholly fails to admonish a defendant of the deportation consequences of a guilty plea. 980 S.W.2d 653, 656 (Tex.Crim.App.1998). Such error is of non-constitutional dimension, however, and to be entitled to reversal, a defendant must show "no more than that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court." *Id.* at 658. In *Carranza*, the defendant was able to show that he was unaware of the consequences and, as a result of his plea, he was subject to a greater risk of deportation and had limited rights in seeking judicial relief from deportation orders. *Id.*

· In the present case, Carmen did not show that she was unaware of the consequences of her plea or that she was misled or harmed by the trial court's failure to admonish. Therefore, Carmen has not shown that the trial court's failure to admonish her regarding the deportation consequences of her guilty plea resulted in harm or caused her plea to be involuntary.

### REASONABLE DOUBT INSTRUCTION

In her second point of error, Carmen complains of the trial court's failure to include a reasonable doubt instruction in the punishment charge submitted to the jury. Carmen contends that such an instruction was necessary because: (1) evidence of extraneous offenses was introduced which the jury was required to find beyond a reasonable doubt; and (2) the jury was asked to determine whether Carmen used a deadly weapon.

With regard to the extraneous offense evidence, the State responds that no instruction was necessary because the acts Carmen refers to as extraneous offenses are not extraneous offenses but are "part and parcel of the facts pertinent to the crime." In addition, the State responds that a reasonable doubt instruction is not required in the absence of a request for such an instruction. With regard to the deadly weapon finding, the State asserts that there is no constitutional or statutory mandate that requires the State to prove the affirmative finding beyond a reasonable doubt. In addition, the State asserts that the failure to give an instruction as to the deadly weapon finding was waived in the absence of a request for such an instruction.

### A. Extraneous Offense Evidence

In her brief, Carmen contends that evidence of four extraneous offenses was introduced. In order to evaluate the State's contention that the acts were not extraneous offenses, it is necessary to review the evidence relating to these acts.

Willie Garza, Jr. ("Junior"), Carmen's husband at the time of this offense, testified regarding the events that preceded his father's death. His testimony is largely undisputed. Carmen was drinking at a public establishment in celebration of the birthday of Willie Garza, Sr. ("Senior"). When Carmen, Junior and Senior left the establishment, Carmen and Senior began arguing. Shortly after the argument began, Carmen grabbed Senior by the neck and kissed him. In her brief, Carmen refers to this act as an extraneous offense of assault. Junior ended the argument by grabbing Carmen, walking her to the car, giving her the keys, and telling her to leave. Carmen slapped Junior's face. This is referred to in Carmen's brief as evidence of another extraneous offense of assault. While Carmen was leaving the parking lot, she ran over Junior and Senior. Senior died as a result. After leaving the parking lot, Carmen was stopped on

---

**1.** Since the failure to admonish affects the voluntariness of Garza's plea, we have jurisdiction to address this issue despite Garza's open plea to the jury. *See Flowers v. State,* 935 S.W.2d 131, 133 (Tex.Crim.App.1996).

suspicion of driving while intoxicated. The arresting officer testified that he had difficulty identifying Carmen because they could not find a driver's license and Carmen used a different name. Carmen refers to this act as the extraneous offense of failure to identify. Finally, the officer who attempted to administer the intoxilyzer test testified that while they were waiting to take the test, Carmen asked the officer to lean forward so she could lick his lips. Carmen refers to this act as the extraneous offense of offering a gift to a public servant.

■ "Same transaction contextual evidence" refers to other offenses connected with the primary offense and is admissible when the evidence is necessary for the state to logically present evidence of the charged offense. *Lockhart v. State,* 847 S.W.2d 568, 570 (Tex.Crim.App.1992); *Sparks v. State,* 935 S.W.2d 462, 466 (Tex. App.—Tyler 1996, no pet.). The reason for admitting such evidence is "simply because in narrating the one it is impracticable to avoid describing the other, and not because the other has any evidential purpose." *Mayes v. State,* 816 S.W.2d 79, 86–87 n. 4 (Tex.Crim.App.1991). Crimes do not occur in a vacuum, and the state is entitled to prove the circumstances surrounding the crime even though they may seem like irrelevant details. *Cunningham v. State,* 982 S.W.2d 513, 521 (Tex.App.— San Antonio 1998, pet. ref'd); *Wilkerson v. State,* 874 S.W.2d 127, 131 (Tex.App.— Houston [14th Dist.] 1994, pet. ref'd). The other offenses described in Carmen's brief are intermixed or blended with the primary offense such that they would be admissible as same transaction contextual evidence.

■ The Texas Court of Criminal Appeals has held that a limiting instruction is not required when evidence is admitted as same transaction contextual evidence. *Camacho v. State,* 864 S.W.2d 524, 535 (Tex. Crim.App.1993). However, it does not appear that the Texas Court of Criminal Appeals has addressed whether a reason-

able doubt instruction is required where evidence of other offenses is admitted during the punishment phase of a trial as same transaction contextual evidence. The issue has been addressed by the Fort Worth·court of appeals in *Norrid v. State,* 925 S.W.2d 342, 349 (Tex.App.—Fort Worth 1996, no pet.). In *Norrid,* the Fort Worth court reasoned that a reasonable doubt instruction was not required since the defendant was not on trial for the extraneous offense and the jury would not be required to find those elements. 925 S.W.2d at 349. Generally, when extraneous offense evidence is offered at punishment, it is offered to assist the jury in evaluating the defendant's character for purposes of assessing punishment. In that instance, the state must bear the burden of proving that the defendant committed the extraneous offense, because it will be used as evidence against the defendant. Where the evidence is presented as same transaction contextual evidence, the state is not offering the evidence to prove the defendant's character but simply to explain the surrounding circumstances. Although the jury may use the evidence to assess the defendant's character, by holding that a limiting instruction is not required, the Texas Court of Criminal Appeals has already decided that we should not concern ourselves with that possibility. Therefore, since same transaction contextual evidence is not offered as evidence against a defendant, but simply to explain the circumstances of the offense, a reasonable doubt instruction is not required.

### B. Deadly Weapon Finding

■ With regard to the necessity for the reasonable doubt instruction based on the deadly weapon finding, Carmen notes that the jury charge required the jury to find beyond a reasonable doubt that Garza used a deadly weapon. The State responds, acknowledging that the Texas Court of Criminal Appeals stated in *Hill v. State,* 913 S.W.2d 581 (Tex.Crim.App. 1996), that the state is required to prove

the use of a deadly weapon beyond a reasonable doubt to be entitled to an affirmative finding. However, the State asserts that no authority supports that statement in the *Hill* opinion and that such a requirement has no statutory or constitutional basis.

In a jury trial, the state can obtain a deadly weapon finding in one of three manners: (1) if the indictment specifically alleges the accused used or exhibited a deadly weapon and the jury finds the defendant guilty as charged; (2) the jury finds the accused guilty as charged and the weapon pled is a deadly weapon per se; or (3) if the jury provides an affirmative response to a special issue concerning the defendant's use or exhibition of a deadly weapon. *Polk v. State*, 693 S.W.2d 391, 396 (Tex.Crim.App.1985). Since the indictment in this case did not contain an allegation as to a deadly weapon, the jury was required to provide an affirmative response to a special issue concerning the use of a deadly weapon because a motor vehicle is not a deadly weapon per se. *Medina v. State*, 962 S.W.2d 83, 88 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd) (motor vehicle not deadly weapon per se); *Morgan v. State*, 775 S.W.2d 403, 406 (Tex.App.—Houston [14th Dist.] 1989, no pet.) (same).

Although the State contends that there is no support for the *Hill* court's adoption of a requirement that the State prove the use of a deadly weapon beyond a reasonable doubt, we are bound by *Hill* until the Court of Criminal Appeals reverses its position. *See Sheridan v. State*, 950 S.W.2d 755, 758–59 (Tex.App.—Fort Worth 1997, no pet.) (applying *Hill*); *Powell v. State*, 939 S.W.2d 713, 718 (Tex.App.—El Paso 1997, no pet.) (applying *Hill* to evaluate sufficiency of evidence supporting finding). Moreover, the "beyond a reasonable doubt" standard was applied by appellate courts to evaluate the sufficiency of the evidence to support an affirmative finding on use of a deadly weapon even prior to the issuance of *Hill*. *See, e.g., Kent v.*

*State*, 879 S.W.2d 80, 82–83 (Tex.App.—Houston [14th Dist.] 1994, no pet.) (applying beyond a reasonable doubt standard in evaluating evidence to support finding); *Thomas v. State*, 875 S.W.2d 774, 779 (Tex. App.—Beaumont 1994, pet. ref'd) (same); *Arizmendez v. State*, 807 S.W.2d 436, 439 (Tex.App.—Houston [14th Dist.] 1991, no pet.) (same).

In this case, the jury was instructed that it was required to find beyond a reasonable doubt that the defendant used a deadly weapon; however, no definition of reasonable doubt was given. In *Fields v. State*, 966 S.W.2d 736, 742 (Tex.App.—San Antonio 1998, pet. granted), we noted that the definition on reasonable doubt was made an inextricable part of the court's instruction on reasonable doubt in *Geesa v. State*, 820 S.W.2d 154, 162–63 (Tex.Crim. App.1991). We held that the trial court erred in failing to define reasonable doubt in connection with a reasonable doubt instruction regarding the requisite proof of extraneous offenses introduced at the punishment phase. *Fields*, 966 S.W.2d at 741–42. We previously held in *Huizar v. State*, that the trial court is required to give the reasonable doubt instruction even in the absence of a request where extraneous offenses are introduced into evidence during the punishment phase of a trial. 966 S.W.2d 702, 708 (Tex.App.—San Antonio 1998, pet. granted).

Carmen would have us extend our holdings in *Huizar* and *Fields* to the failure to define reasonable doubt when a jury is instructed that it must affirmatively find the use of a deadly weapon beyond a reasonable doubt. We decline to do so. In *Huizar*, we held that the reasonable doubt instruction was required to be given in the absence of a request because a procedural rule, section 3(b) of article 37.07, required that the instruction be given, and the procedural rules governing the punishment phase of trial are to be applied in the same manner as during the guilt/innocence phase. 966 S.W.2d at 709–10. In *Fields*, we held that a definition of reasonable

**337**

doubt was required to be given in the absence of a request because the procedural rules require that the reasonable doubt instruction be given and the definition is an inextricable part of that instruction. 966 S.W.2d at 741–42. In this case, no procedural rule requires that a jury be instructed on the reasonable doubt standard when the jury is asked to determine whether a deadly weapon was used. Absent a procedural rule requiring such an instruction, the reasoning in *Huizar* and *Fields* is inapplicable, and by failing to request a reasonable doubt instruction, Carmen waived her right to complain of its omission on appeal. *See Posey v. State,* 966 S.W.2d 57, 61 (Tex.Crim.App.1998).

### INEFFECTIVE ASSISTANCE OF COUNSEL

■■■■■ The constitutional right to counsel means the right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a strong presumption that effective assistance was rendered and that reasonable professional judgment was exercised in making significant decisions. *See Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. The defendant bears the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *See Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App.1985); *Ybarra v. State,* 890 S.W.2d 98, 112 (Tex.App.—San Antonio 1994, pet. ref'd).

Until recently, the standard for reviewing an ineffective assistance of counsel claim arising during the guilt/innocence phase differed from the standard applied in reviewing an alleged deficiency in counsel's performance during the punishment phase of a trial. In *Hernandez v. State,* 988 S.W.2d 770 (Tex.Crim.App. 1999), the Texas Court of Criminal Appeals eliminated this distinction and held that the two-prong standard set forth in *Strickland* applied to both phases of trial.

■■■■■ To obtain a reversal based on ineffective assistance of counsel, appellant must show that (1) counsel made such serious errors that he was not functioning effectively; and (2) counsel's deficient performance so prejudiced the defendant that but for counsel's errors, the trial outcome would have been different. *See Strickland,* 466 U.S. at 687, 104 S.Ct 2052; *Holland v. State,* 761 S.W.2d 307, 314 (Tex. Crim.App.1988). Prejudice is demonstrated when the convicted defendant shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

■■■ *a. Reasonable Doubt Instruction.* Carmen contends that counsel was ineffective based on his failure to request a "beyond a reasonable doubt" instruction. With regard to the failure to request a reasonable doubt instruction as to the offenses that were same transaction contextual evidence, we have held that such an instruction was not required. Therefore, the failure to request such an instruction could not be ineffective assistance. With regard to the failure to request the reasonable doubt definition in connection with the reasonable doubt instruction on the deadly weapon finding, "failure to ask for [a definition] does not amount to ineffective assistance in the absence of authority requiring [a definition]." *Huizar,* 966 S.W.2d at 706.

■■■ *b. Improper Impeachment.* Carmen next asserts that trial counsel permitted the State to improperly impeach her daughter regarding her daughter's probation for driving while intoxicated. During direct examination, defense counsel elicited testimony from Carmen's daughter, Chrissy Bacera, that after Carmen was previously convicted for two DWIs, Carmen avoided drinking and driving. During cross-examination, the State initially inquired into whether Carmen continued drinking while on probation. Bacera stated that she did not drink "avidly" and that

Carmen had gone for a long period of time without drinking. The State then inquired into whether Bacera believed that her mother had a drinking problem. Bacera stated that she did not. Although the State then inquired into Bacera's probation for DWI, the questioning led to an inquiry into whether Carmen kept alcohol in the home in which she lived with Bacera and whether Carmen was upset with Bacera about her DWI. Bacera responded that no alcohol was kept in the house since her mother's arrest and that her mother was upset with her for her DWI. Although the questioning regarding Bacera's probation damaged her credibility, it led to further questioning that helped Carmen. Carmen's negative response to Bacera's probation showed that Carmen did not condone drinking and driving, and her refusal to keep alcohol in the house since her arrest showed that she had changed her views with regard to alcohol. Since this questioning came directly after the questioning regarding Bacera's probation, trial counsel's decision to not object and allow the questioning to continue could have been sound trial strategy, and since the impeachment of Bacera did not directly damage Carmen, the failure to object did not detract from the reasonably effective assistance trial counsel was providing.

 *c. Murder Charge.* Carmen further contends that when trial counsel asked whether she was charged with murder during direct examination, it raised negative connotations and implied that she intentionally caused Senior's death. The State asserts that the testimony was elicited as sound trial strategy to preclude the State from eliciting the testimony during cross-examination, thereby giving the appearance that Carmen was being open with the jury. In addition to avoiding the question during cross-examination, trial counsel could have asked the question to show the jury that although Carmen was initially charged with murder, she was only indicted for intoxication manslaughter. With this testimony, trial counsel could

have intended to send the jury a message that the State was unable to prove Carmen caused Senior's death intentionally and instead had to proceed with the theory that the offense occurred by accident or mistake. Therefore, trial counsel could have asked the question as sound trial strategy.

*d. Misinforming Venire Regarding Punishment Range.* Carmen also complains that trial counsel misinformed the venire regarding the punishment range by failing to communicate that the trial judge could impose some jail time as a condition for probation. Carmen contends that trial counsel could have provided this information during the following exchange:

MR. WOODS: Can you consider that [probation] as part of the range of punishment? Okay. Flores, Munn, Whitman, Malain.

PROSPECTIVE JUROR: Excuse me. Could you repeat what you just said?

MR. WOODS: I hope so without catching anybody's trouble over here, but I'm going to try. Can you—if understanding—let me phrase this this way. In a case where the charge is intoxication manslaughter a person is found guilty by their plea or otherwise understanding that a person placed on probation is given conditions of probation that are given by the Judge and some of the conditions which I read to you earlier.

Now it's up to the Judge to impose whatever conditions there are, but considering that you can consider, or do you still feel you could not consider to recommend probation as part of the punishment to a person convicted of intoxication manslaughter?

PROSPECTIVE JUROR: In other words, would I consider probation for something like that? Manslaughter intoxication? No.

PROSPECTIVE JUROR: Probation only or probation on top of time served? Or any part of it?

MR. WOODS: Let's put it this way. As Mr. Spoor stated, a person is eligible for

probation if they, before, have not [been] convicted of a felony.

PROSPECTIVE JUROR: But you can also serve time and then have probation after your time is served.

MR. WOODS: I think you're talking about parole.

PROSPECTIVE JUROR: Isn't that still probationary time that can be given after a sentence?

MR. WOODS: Again, well I tell you the federal system has that but—you're talking about a split sentence. But the federal system has that, but we don't have that. A person's eligibility for probation is any time recommended by the jury up to ten years. Beyond ten years they're not eligible for probation.

Trial counsel was reasonably effective in responding to the questions posed. While in hindsight it may have been helpful to have mentioned the possibility that jail time could be imposed as a condition of probation, given the flow of the exchange, counsel was not ineffective in failing to mention that possibility.

## CONCLUSION

Carmen did not show that the trial court's failure to admonish her regarding the deportation consequences of her guilty plea resulted in harm or caused her plea to be involuntary. Carmen also failed to prove that her trial counsel was ineffective. The extraneous offenses about which Carmen complains are same transaction contextual evidence, and no reasonable doubt instruction is required in relation to that evidence. Furthermore, Carmen waived any right to complain of the trial court's failure to define reasonable doubt in relation to the deadly weapon finding by failing to request such a definition. The trial court's judgment is affirmed.