Opinion to: SR TJ EVK ERA GCH LCH JB JS MM TGT
















 Opinion issued
March 4, 2010                                                       

 

 

 

 

 

 



 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00724-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



jorge enrique martinez, Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 

 



On Appeal from the 248th District Court

Harris County, Texas

Trial Court Cause No. 1161113

 

 

MEMORANDUM
OPINION

Jorge Enrique Martinez was convicted of aggravated
robbery in a jury trial and his punishment was assessed at thirty-seven years
in prison.[1]  In his sole point of error, Martinez contends
that he was egregiously harmed by the trial court’s failure to sua sponte give
the jury a reasonable doubt instruction in the punishment charge regarding
extraneous offenses.  We affirm. 

Background

          The Ali family was robbed at gunpoint
by appellant and three other men in a “home invasion” robbery during the early
morning hours of April 4, 2008, after the men, carrying guns and duct tape,
accosted Abid Ali, a small business owner, as he was leaving his home for work
around 5:00 a.m.  After forcing Ali back
into the house at gunpoint, and taking a watch, wallet, and a bank pouch with
several thousand dollars from Ali, the men made Ali lie on the ground and then
taped his hands with duct tape.  Three of
the men then began going through the rest of the house; Martinez stayed with
Ali, uttering threats to Ali’s family in abusive language while Ali begged him to
take whatever he wanted, but to let his family go.  In the house at the time were Ali’s bedridden
father, whose bedroom was downstairs, and Ali’s wife, adult son, adult
daughter, and minor son, who were all upstairs. 

          During
the course of the robbery, the men duct-taped Ali’s wife, two sons, and
daughter and forced them into the parents’ bedroom upstairs, holding guns to
all of them and threatening them, while demanding and searching for money and
jewelry.  Ali was taken upstairs as well
and was forced to open a safe.  The scene
was chaotic and Ali was unsure where Martinez was after they went upstairs, could
not say whether Martinez remained in the room with him or not, and could not
remember which of the men took any of the actions that Ali saw happen upstairs.  

Ali’s daughter was the last to be
brought into the room and had managed to call 9-1-1 from her cell phone before
being discovered by the men in her room and forced to go into the room with the
others, where she was also duct-taped.  Martinez
then began shouting, “Give us all your money, we’re going [to] F-ing kill you
guys” and yelling other threats.  The
daughter told him, “I have more money” and asked to go to the restroom.  Martinez and another man picked her up and took
her to the restroom where she took her purse from the door hanger and gave them
$40.  The men had asked, “This is it?,”
and began demanding more so she told them that she had jewelry in her bedroom.  They took her to her bedroom, but then shoved
her out of the way and opened up her jewelry boxes themselves.  After they went through her bedroom, the men
started taking her back to her parents’ room. 

While Martinez and the other man were
walking the daughter back to her parents’ room, someone from downstairs yelled
something like “Policia, policia,” or “Police are here,” and someone else who
was upstairs said, “The cops are coming.”  Martinez and the other man shoved the daughter
to the floor and began running downstairs.  All the men upstairs left running, trampling
on the Alis as they did so. 

The police arrived at the house as
Martinez and two other men ran out of the house and fled. Martinez was found
shortly afterwards, hiding in some bushes in a nearby yard.  Ali identified Martinez shortly after the
robbery when the police had shown him three men at the scene caught by the
police.  According to Ali, Martinez was
“one of the meanest” of the men and had “just wanted to shoot.”  

          At
Martinez’s trial—which was held jointly with that of one of the co-defendants,
Jose J. Santiago—Ali, his wife, his older son, and his eldest daughter
testified during the guilt-innocence phase of trial, recounting what took place
at their home during the aggravated robbery.  The jury was instructed that it could find
Martinez guilty of aggravated robbery as a principal or as a party to
aggravated robbery by any of the other three men.  After the guilty verdict for both Martinez and
Santiago, only Ali and his wife testified at the punishment phase of trial,
both speaking briefly of the impact that the robbery had had on their lives and
those of their children, without referencing any specific events on the morning
of the aggravated robbery.   

During closing arguments at punishment,
Santiago’s attorney asked the jury to assess community supervision and
Martinez’s attorney asked for a punishment between five and ten years of
imprisonment.  The State, after reminding
the jury of the nature of the robbery as described by the witnesses during the
guilt-innocence phase of trial, asked the jury to “start from 40 years and work
up from there.”  The jury assessed
punishment at thirty-seven years for both men.

Discussion

 

Martinez contends that “the trial
court erred by failing to sua sponte instruct the jury on the proper burden of
proof for extraneous bad acts or offenses”  “referred to . . . during presentation of the victim
impact testimony” and the State’s closing arguments during the punishment phase
of trial.  Specifically, Martinez argues
that the Ali family’s testimony during the guilt-innocence phase of trial describing
various actions occurring during the course of the aggravated robbery—such as
the duct-taping of the family and the placing of guns to the heads of Ali’s
children and wife—was testimony of “extraneous offenses” requiring a reasonable
doubt jury instruction at the punishment phase of trial under section 3(a) of
article 37.07 of the Texas Code of Criminal Procedure.[2]  Martinez did not request such an instruction
at trial, nor object to its omission, but asserts on appeal that he was
egregiously harmed by the trial court’s not sua sponte giving this instruction.

A.           
Standard of Review 

In assessing complaints of jury charge error, we first
must determine whether error existed in the charge.  Middleton
v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).   Only if we find error do we consider whether
an objection to the charge was made and analyze for harm.  Id.  If we find jury charge error, but no objection
was lodged to such error at trial, we may not reverse unless the error was so
egregious and created such harm that the appellant was denied a fair
trial.  Warner v. State, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). In order
to determine egregious harm, we examine “the entire jury charge, the state of
the evidence, including the contested issues and weight of probative evidence,
the argument of counsel, and any other relevant information revealed by the
record of the trial as a whole.” Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  The record must show that the appellant suffered
actual, rather than merely theoretical, harm.  See Warner,
245 S.W.3d at 461. 

B.              
Reasonable doubt instruction for
extraneous offenses at punishment 

Article 37.07 of the Texas Code of
Criminal Procedure provides that, after a finding of guilt, 

“[e]vidence may be offered by the state and the
defendant as to any matter the court deems relevant to sentencing, including
but not limited to the prior criminal record of the defendant, sentencing,
including but not limited to the prior criminal record of the defendant, his
general reputation, his character, an opinion regarding his character, the circumstances of the offense for which
he is being tried, and,
notwithstanding  Rules 404 and 405, Texas
Rules of Evidence, any other evidence of
an extraneous crime or bad act that is shown beyond a reasonable doubt by
evidence to have been committed by the defendant or for which he could be held
criminally responsible, regardless of whether he has previously been
charged with or finally convicted of the crime or act.”  

 

Tex. Code
Crim. Proc. Ann. art.
37.07, §3(a)(1) (Vernon Supp. 2009) (emphasis added).  If evidence of extraneous offenses by the
defendant is admitted at the punishment phase of trial, or are admitted during
the guilt-innocence phase of trial, but used by the State in the punishment
phase of trial, the trial court must charge the jury that it may only consider
extraneous offense evidence when proven beyond a reasonable doubt, even if the
defendant fails to request the instruction. 
See Rayme v. State, 178 S.W.3d
21, 25 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d) (citing Huizar v. State, 12 S.W.3d 479, 484
(Tex. Crim. App. 2000)); Graves v. State,
176 S.W.3d 422, 434–35 (Tex. App.—Houston [1st Dist.] 2004, pet. struck). 

C.      Circumstances
of the offense versus extraneous offenses

           The Texas Legislature has specifically
distinguished the “circumstances of the offense for which [a defendant] is
being tried” from “extraneous offenses” for the purposes of the admittance of
evidence at the punishment phase of a trial.  See Tex. Code Crim. Proc. Ann. art. 37.07,
§ 3(a)(1).  While a jury must be given a reasonable
doubt instruction as to “extraneous offenses” used by the State at punishment,
no such requirement applies to a jury’s consideration of other evidence at
punishment such as the circumstances of the offense for which a defendant is
being tried or victim-impact evidence.  See Bluitt v. State, 137 S.W.3d 51, 54 (Tex.
Crim. App. 2004); Rayme, 178 S.W.3d
at 25.  

“Circumstances of the offense which
tend to prove the allegations of the indictment are not extraneous offenses.” Camacho v. State, 864 S.W.2d 524, 535 (Tex.
Crim. App. 1993) (quoting Ramirez v.
State, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991)).  Additionally, where
“several crimes are intermixed, or blended with one another, or connected so
that they form an indivisible criminal transaction,” they are “same transaction
contextual evidence” and not extraneous offenses.  See
Mayes v. State, 816 S.W.2d 79, 87 n.4 (Tex. Crim. App. 1991) (internal
citations omitted).  Same transaction
contextual evidence “illuminates the nature of the crime alleged by imparting
to the trier of fact information essential to understanding the context and
circumstances of events.” Lamb v. State,
186 S.W.3d 136, 142 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing Camacho, 864 S.W.2d at 532).  The purpose of such evidence is to assist the
jury in assessing punishment, and no reasonable doubt instruction is required
at punishment regarding such evidence.  Glockzin v. State, 220 S.W.3d 140, 152
(Tex. App.—Waco 2007, pet. ref’d); see also
Atkinson v. State, Nos. 08-00454-CR, 01-08-00455-CR, 2010 WL 143458, at
*7–8 (Tex. App.—Houston [1st Dist.] Jan. 14, 2010, no pet. h.); Garza v. State, 2 S.W.3d 331, 335 (Tex.
App.—San Antonio 1999, pet. ref’d) (holding instruction was not required at
punishment because “same transaction contextual evidence” simply explained “the
circumstances of the offense”).

          The
testimony that Martinez asserts required a reasonable doubt instruction at
punishment was testimony describing the circumstances of the offense for which
appellant was convicted,[3] not
extraneous offenses.  Even such actions occurring
during the course of the aggravated robbery that could be considered legally separate
offenses would be same transaction contextual evidence, not extraneous
offenses.  See Mayes, 816 S.W.2d at 87 n.4; Atkinson, 2010 WL 143458, at *7; Glockzin, 220 S.W.3d at 152; Garza,
2 S.W.3d at 335.

Because the Ali family’s descriptions
of the actions of the four men occurring during the aggravated robbery given
during the guilt-innocence phase of trial were not evidence of “extraneous
offenses,” see Camacho, 864 S.W.2d at
535 and Mayes v. State, 816 S.W.2d at
87 n.4, the trial court was not required to give a reasonable doubt instruction
regarding this evidence during the punishment phase of trial. Tex. Code Crim. Proc. Ann. art. 37.07,
§3(a)(1); Bluitt, 137 S.W.3d at 54; Atkinson, 2010 WL 143458, at *7–8; Glockzin, 220 S.W.3d at 152; Garza, 2 S.W.3d at 335.  We hold, therefore, that the trial court was
not required to sua sponte give the jury a reasonable doubt instruction at
punishment as to this evidence.  Having
determined that the trial court did not commit charge error by not giving such
instruction, we need not analyze whether Martinez was egregiously harmed.  See
Middleton, 125 S.W.3d at 453.

We overrule Martinez’s sole point of
error. 

CONCLUSION

We affirm the judgment of the trial
court.

 

 

 

 

 

                                                          Jim
Sharp

                                                          Justice


 

Panel consists of Justices Keyes,
Sharp, and Massengale.

Do not publish.  Tex.
R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. §§
12.42(a)(1), 29.02 (a)(2)(D), 29.03(a)(2) (Vernon 2003).  





[2]
              Tex. Code Crim.Proc. Ann. art. 37.07, 3(a)(1) (Vernon Supp. 2009).  





[3]               The
testimony occurred during direct examination by the State in the
guilt-innocence phase of the trial, in response to questions by the prosecutor
such as “what happened,” “then what happened,” or “what did you see” and was
part of each Ali family member’s individual account of the way the aggravated
robbery occurred, where each person was during the offense, and how appellant
and his accomplices acted during the offense.