**Opinion issued November 4, 2014**



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-13-00254-CR

————————————

**TIMOTHY SPIVY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 351st District Court
Harris County, Texas
Trial Court Case No. 1364113

## MEMORANDUM OPINION

Timothy Spivy appeals a judgment convicting him of unauthorized use of a

motor vehicle. *See* TEX. PENAL CODE ANN. § 31.07(a) (West 2011). After a jury

found him guilty, Spivy pleaded true to two enhancement paragraphs and the jury

assessed punishment of 20 years in prison and a $10,000 fine. In his sole issue on

appeal, Spivy contends that he was egregiously harmed by the trial court's error in failing to instruct the jury during punishment that it could not consider extraneous offenses unless they were proven beyond a reasonable doubt.  We affirm.

## Background

During the guilt-innocence phase, Freeda Berry, a 70-year-old retired widow, testified that Spivy came to her home in Judsonia, Arkansas, offering to make home repairs.  Berry signed a contract to pay Spivy $2,460 to make several repairs, including replacing her bathroom floor.  She gave Spivy $200 as an initial payment.  After three days, Spivy ripped up two bathroom tiles, then told Berry that he needed more money to buy supplies.  He asked for additional money several times.

Several weeks after the contract was signed, Spivy had not completed any further work.  He called Berry and asked her to meet him at a Chili's 40 miles from her home to give him more money.  Berry borrowed the money from her son-in-law and drove to meet Spivy.  Spivy took the money and got into his truck, but the truck broke down.

Spivy asked Berry if he could borrow her car, and she refused.  He asked again and she agreed to drive him to the store where he had told her he intended to purchase supplies.  Spivy took the keys from Berry and told her he would see her

2

in half an hour.  When Spivy did not return, Berry called him repeatedly, but there was no answer.  Berry waited nine hours before contacting the police.

Several days later, Berry contacted Spivy, and he told her he would return her car to a nearby grocery store parking lot.  However, Spivy later called her and said he would not return the car.

Houston Police Officer J. Morin testified that a month and a half after Spivy took Berry's car, he and his partner were on patrol in Houston and ran the license plate of an out-of-state car with an Arkansas license plate.  The car had been reported stolen, so they stopped the car.  Spivy was driving the car and asked the officers why he had been stopped.  They told him that the vehicle had been reported stolen, and he told them he had borrowed it from his girlfriend and should have returned it.  Morin contacted Berry, who confirmed that the car had been stolen.

During punishment, Berry testified that Spivy took approximately $4,000 from her.  She had no cash available the day that Spivy took her car and borrowed money from her son-in-law to give to Spivy.  After Spivy took the money, she was unable to afford her medication and considered filing for bankruptcy.

### Discussion

In his sole point of error, Spivy contends that the trial court erred in failing to instruct the jury during punishment that it could not consider evidence regarding

the money he stole from Berry unless the theft was proven beyond a reasonable doubt.

## A. Standard of Review

In analyzing a jury-charge issue, our first duty is to decide if error exists. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Only if we find error do we then consider whether an objection to the charge was made and analyze for harm. *Tottenham*, 285 S.W.3d at 30; *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").

"The degree of harm necessary for reversal depends upon whether the error was preserved." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Error properly preserved by a timely objection to the charge will require reversal "as long as the error is not harmless." *Almanza*, 686 S.W.2d at 171. The Court of Criminal Appeals has interpreted this to mean that any harm, regardless of degree, is sufficient to require reversal. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). However, when the charging error is not preserved "and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial

4

trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171; *see Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013) (egregious harm "is a difficult standard to meet and requires a showing that the defendants were deprived of a fair and impartial trial."). Fundamental errors that result in egregious harm are those which affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect his defensive theory." *Almanza*, 686 S.W.2d at 172.

When considering whether a defendant suffered harm, the reviewing court must consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* at 171. The reviewing court must conduct this examination of the record to "illuminate the actual, not just theoretical, harm to the accused." *Id.* at 174; *see Nava*, 415 S.W.3d at 298 (record must disclose "actual rather than theoretical harm") (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

**B.    Applicable Law**

When evidence of extraneous offenses or bad acts is admitted during the punishment phase, the trial court is usually required to instruct the jury sua sponte on the reasonable-doubt standard of proof. *See Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). However, some Texas appellate courts have held that

an instruction is not required where the extraneous offenses are same-transaction contextual evidence. *See, e.g.*, *Roberts v. State*, 2009 WL 6338618, at \*10 (Tex. App.—Houston [14th Dist.] Sept. 24, 2009, pet. ref'd) (mem. op., not designated for publication); *Garza v. State*, 2 S.W.3d 331, 335 (Tex. App.—San Antonio 1999, pet. ref'd). Same-transaction contextual evidence imparts to the jury information essential to understanding the context and circumstances of events which may constitute legally separate offenses, but are blended or interwoven with the charged offense. *See Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993).

## C. Analysis

Spivy asserts that he was egregiously harmed by the trial court's failure to instruct the jury during punishment that it should consider the Berry theft only if it was proven beyond a reasonable doubt. The State argues that the trial court did not err in failing to give the instruction because evidence of the theft was same-transaction contextual evidence, and that even if the instruction was required, Spivy was not egregiously harmed by its omission.

### *Was there error in the charge?*

Under *Almanza*, our first duty it to determine whether there was error in the charge. *Almanza*, 686 S.W.2d at 174; *Tottenham*, 285 S.W.3d at 30. We conclude that there was.

It is undisputed that the charge did not instruct the jury that extraneous offenses, other than those included in the two enhancement paragraphs, must be proven beyond a reasonable doubt. The State argues that the instruction was not required, because evidence of the Berry theft was same-transaction contextual evidence. But we do not agree with the State's contention that all of the evidence it adduced constituted same-transaction contextual evidence.

Some of it was. In particular, evidence that Spivy had agreed to do home repair work for Berry, arranged the meeting at Chili's, asked to borrow Berry's car to purchase supplies, and promised to return the car shortly was necessary for the jury to understand why Berry met Spivy and did not immediately call the police when Spivy left the Chili's with Berry's car. But all of this evidence could have been presented without mention of the fact that Spivy took money from Berry, or the financial and emotional impact that Spivy's theft of Berry's money had on her. *See Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (en banc) (same-transaction contextual evidence is admissible where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others."). Although the theft of Berry's money and the unauthorized use of the vehicle were related, information about the theft was not "essential" to understanding the events

7

surrounding the unauthorized use of the vehicle, and evidence regarding the events surrounding the unauthorized use of the vehicle could be presented without showing evidence regarding the theft. *See Camacho*, 864 S.W.2d at 532; *Rogers*, 853 S.W.2d at 33. Accordingly, the evidence of Spivy's theft of money from Berry was not same-transaction contextual evidence, and a reasonable doubt instruction was required when the State presented evidence regarding the theft during punishment. *See Huizar*, 12 S.W.3d at 484. The trial court erred in failing to give the instruction. *See id.*

***Was Spivy egregiously harmed?***

Having concluded there was error in the charge, we examine the degree, if any, to which the error harmed Spivy. It is undisputed that Spivy did not preserve the error; accordingly, Spivy bears the burden to demonstrate that the error caused him egregious harm, i.e., deprived him of a fair trial or vitally affected a defensive theory. *See* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2011) (when reviewing the jury charge on appeal, "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial"); *Almanza*, 686 S.W.2d at 171 ("[I]f no proper objection was made at trial and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had

8

a fair and impartial trial'—in short 'egregious harm.'"); *see also Woodard v. State*, 322 S.W.3d 648, 658 (Tex. Crim. App. 2010) (citing *Almanza*, 686 S.W.2d at 171–72 ("[W]hen no proper objection is made to jury-charge error at trial, a defendant may obtain a reversal only in those few situations where the error is 'fundamental' or is 'egregious[ly] harmful.'")). To determine whether the charge error caused egregious harm, we consider the entire jury charge, the state of the evidence, counsel's argument, and any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171.

### 1. The charge

The punishment charge did not instruct the jury to consider the unadjudicated theft only if it was proven beyond a reasonable doubt, but it did state that the jury should find the enhancement paragraphs relating to Spivy's prior convictions true only if they were proven beyond a reasonable doubt. Spivy argues that the inclusion of a reasonable doubt instruction directed at the enhancement paragraphs, with no comparable instruction directed at other extraneous offenses, implied to the jury that it did not have to find the extraneous theft was proven beyond a reasonable doubt. Spivy also notes that the charge instructed the jury that it could consider all the facts shown by the evidence admitted, which he argues "explicitly grants permission to consider the extraneous offenses without limitation." As the State points out, the omission was mitigated somewhat by the

fact that the charge also instructed the jury that the burden of proof throughout the entire trial rests on the State. Relying upon *Martinez v. State*, 313 S.W.3d 358 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd), the State argues that the entire charge does not weigh for or against a finding of egregious harm. However, in *Martinez*, the instruction that the burden of proof always rests upon the State was the only instruction in the charge related to burdens of proof. Here, the charge also included a reasonable doubt instruction that was directed at the enhancement paragraphs, which, as Spivy argues, could imply that the other offenses did not have to by proven beyond a reasonable doubt. Thus, our analysis under the first *Almanza* factor weighs in favor of finding egregious harm. *See Almanza*, 686 S.W.2d at 171.

## 2. The evidence

Under the second *Almanza* factor, we consider the state of the evidence and, in particular, whether the evidence of the Berry theft was clear, strong, direct, and unimpeached. *See Martinez*, 313 S.W.3d at 367 (citing *Zarco v. State*, 210 S.W.3d 816, 824–25 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (concluding that "clear, direct, and unimpeached testimony" during guilt-innocence phase of trial contributed to finding that defendant was not egregiously harmed by lack of sentencing phase instruction regarding burden of proof for extraneous offenses)). Berry's testimony that Spivy took money from her, but did none of the work he

agreed to do other than pulling up two floor tiles, was uncontradicted. Spivy argues that the evidence could support a conclusion that Berry voluntarily gave Spivy both the money and the use of her vehicle because they were friends, but Spivy made this argument to the jury during guilt-innocence and the jury rejected it when it found Spivy guilty of unauthorized use of Berry's vehicle. *See Zarco*, 210 S.W.3d at 826–27 (where testimony regarding extraneous offenses was of same character and strength as testimony on charged offense and jury believed testimony regarding charged offense, no harm in omission of reasonable doubt instruction from punishment charge); *Martinez*, 313 S.W.3d at 368 (jury likely believed evidence of extraneous offenses beyond a reasonable doubt because evidence that offenses occurred was clear, strong, direct and unimpeached).

During punishment, the State also introduced Spivy's stipulation regarding seven prior convictions and evidence regarding those convictions. Spivy was previously convicted of felony theft, where he stole $80,000 from a 78-year-old victim, and of engaging in organized criminal activity, where he stole $74,000 from a 91-year-old victim. The State presented evidence that he was sentenced to 5 years in prison for the first offense and 20 years in prison for the second offense. The State also presented evidence that Spivy had convictions for misdemeanor theft, felony forgery, bail jumping, and two additional felony theft charges. In each of the felony cases, he was sentenced to five years in prison.

11

Considering all of the evidence and the jury's rejection during guilt-innocence of Spivy's defensive theory to the effect that Berry consented to Spivy's use of her car, we conclude that the second *Almanza* factor weighs against a finding of egregious harm. *See Zarco*, 210 S.W.3d at 826–27.

### 3.    Counsel's argument

Each side presented a short closing argument during punishment. Spivy's counsel did not address the evidence regarding the Berry theft, and focused primarily on the purposes of punishment. The State briefly mentioned the Berry theft in its closing, but it focused primarily on the evidence of Spivy's previous convictions. The gist of the State's closing was that Spivy made a career of victimizing the elderly and that his record of previous convictions showed that he had not learned from his previous offenses and punishments. It was on this basis that the State urged the jury to give Spivy the maximum sentence possible, arguing that he did not get the message before. Accordingly, we conclude that the arguments of counsel weighs against a finding of egregious harm. *See Martinez*, 313 S.W.3d at 368–69 (where references in closing argument to extraneous offense were merely part of State's general theme, and State relied primarily on other evidence to argue for maximum sentence, counsel's argument weighed against finding of egregious harm).

### 4. Other information in the record

Spivy argues that the fact that the jury assessed the maximum sentence supports a finding of egregious harm. However, "a maximum punishment alone does not indicate egregious harm." *Martinez*, 313 S.W.3d at 369 (citing *Huizar*, 12 S.W.3d at 484). There is no egregious harm if the jury would have assessed the sentence imposed, even if properly instructed. *See id.*

Here, the State adduced evidence of Spivy's lengthy criminal record, and urged the jury to assess the maximum punishment because Spivy was a repeat offender. Given Spivy's seven prior convictions, including five felonies, and lengthy prior sentences, we are unpersuaded that it was evidence of the Berry theft (rather than Spivy's criminal record) that caused the jury to assess the maximum sentence available. Accordingly, we conclude that, on this record, the jury's assessment of the maximum sentence does not weigh in favor of finding egregious harm. *See Martinez*, 313 S.W.3d at 369 (maximum sentence weighed against finding of egregious harm where appellant had lengthy criminal record).

In sum, having reviewed the entire record, we conclude that only the first *Almanza* factor weighs in favor of a finding of egregious harm, and the remaining factors do not. Accordingly, we cannot conclude that Spivy was denied a fair and impartial trial or that the failure to instruct regarding the reasonable doubt burden of proof during punishment vitally affected his defensive theory. *See* TEX. CODE

CRIM. PROC. ANN. art. 36.19; *Almanza*, 686 S.W.2d at 171. We hold that the omission of the reasonable doubt instruction did not egregiously harm Spivy. *See Martinez*, 313 S.W.3d at 370 (defendant not egregiously harmed by omission of reasonable doubt instruction where evidence, argument, and other factors weighed against finding egregious harm).

We overrule Spivy's sole issue.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).