

NUMBER 13-15-00166-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JORGE LUIS GONZALEZ,                                                        Appellant,

v.

THE STATE OF TEXAS,                                                         Appellee.

### On appeal from the 389th District Court of
### Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza**
**Memorandum Opinion by Justice Garza**

A jury found appellant, Jorge Luis Gonzalez, guilty of possession of four grams or

more but less than 200 grams of cocaine, a second-degree felony offense. *See* TEX.

HEALTH & SAFETY CODE ANN. § 481.115(a), (d) (West, Westlaw through 2015 R.S.). The

jury assessed punishment at nine years' imprisonment and a $9,000 fine. By three issues, appellant contends: (1) there was insufficient evidence to establish affirmative links supporting his conviction; (2) the trial court erred in omitting an instruction regarding extraneous offenses; and (3) his counsel was ineffective for failing to object to punishment phase evidence. We affirm.

## I. BACKGROUND

Reynaldo Ramirez, a police officer with the City of Donna, Texas, testified that he responded to a report alleging that undocumented immigrants were being held in a mobile home located at a mobile home park in Donna. Several other officers arrived at the scene. As he approached the mobile home, Officer Ramirez activated his "takedown light" and observed a Nissan with the driver's side door open. Two unidentified males were standing outside the vehicle on the driver's side; appellant was seated in the front passenger's seat. The two men who were standing outside the vehicle fled on foot. As Officer Ramirez began to approach, appellant exited the vehicle and ran a short distance. Officer Ramirez ordered appellant to stop, and appellant complied. Officer Ramirez conducted a "pat down," which revealed that appellant was carrying $826 in U.S. currency in his front pant pocket, $6,620 in U.S. currency in a rear pant pocket, and $1,400 in Mexican currency in another rear pant pocket. After placing appellant in his patrol car, Officer Ramirez approached the Nissan. The officer observed in plain view an open baggie containing a substance later identified as cocaine; the baggie was near the gear shift and had a set of keys sitting on top of it. A search of the vehicle revealed another baggie containing cocaine found in an open dashboard compartment on the passenger side and a third baggie containing cocaine found by the right front passenger door handle. All three bags were in plain view and within appellant's reach when he was seated in the vehicle.

2

Additional currency was found inside the dashboard compartment: $585 in Guatemalan currency and $166 in Honduran currency. On cross-examination, Officer Ramirez admitted that appellant did not appear to be under the influence of drugs and that the baggies of cocaine were not tested for fingerprints.

Joseph Trevino, an officer with the Donna Police Department, testified that he responded to the call at the mobile home. Officer Trevino explained that he detained one of the men who ran from the vehicle; the detained male was turned over to the Border Patrol.

Sergio Flores, an investigator with the Donna Police Department, testified that he spoke to appellant after appellant had been given *Miranda* warnings. Officer Flores said that there were three vehicles on the property on the night appellant was arrested, including the one in which appellant was seated. All three vehicles were registered in appellant's name. Officer Flores explained appellant denied knowing about the presence of the drugs. On cross-examination, Officer Flores testified that appellant told him that one of the men who fled on foot was a regular consumer of cocaine.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, appellant contends the evidence is insufficient to support the jury's finding of affirmative links between him and the cocaine.[1]

### A. Standard of Review and Applicable Law

Under the *Jackson v. Virginia* sufficiency standard of review, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact

---

[1] Specifically, appellant challenges the denial of his motion for a directed verdict, which is a challenge to the sufficiency of the evidence to support his conviction. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990); *Zavala v. State*, 956 S.W.2d 715, 720 (Tex. App.—Corpus Christi 1997, no pet.).

could have found the essential elements of the offense beyond a reasonable doubt. *See* 443 U.S. 307, 318–19 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). This standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames*, 353 S.W.3d at 860. We must determine whether the inferences made by the trier of fact are reasonable based on the "cumulative force of all the evidence." *Id.* We conduct this review by measuring the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc); *see Adames*, 353 S.W.3d at 860 (measuring the evidentiary sufficiency with "explicit reference to the substantive elements of the criminal offenses as defined by state law").

Under a hypothetically correct jury charge, to prove unlawful possession of a controlled substance, the State has the burden of showing that the accused exercised control, management, or care over the substance, and that the accused knew the substance possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Because "an accused must not only have exercised actual care, control, or custody of the substance, but must also have been conscious of his connection with it and have known what it was, evidence which affirmatively links him to it suffices for proof that he possessed it knowingly." *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995) (en banc). "The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Poindexter*, 153 S.W.3d at 406. Thus, when "the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional

4

independent facts and circumstances which affirmatively link the accused to the contraband." *Id.* (citation omitted). Mere presence of the accused at the location where the drugs are found is insufficient, by itself, to establish actual care, custody, or control of the drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). Presence or proximity, however, when combined with other evidence, may be sufficient. *Id.*

Texas courts have recognized the following non-exclusive list of possible "affirmative links" as sufficient, either singly or in combination, to establish possession of contraband: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id.* at 162 n.12; *see Jenkins v. State*, 76 S.W.3d 709, 712–13 (Tex. App.—Corpus Christi 2002, pet. ref'd). It is the State's burden to show that "there are affirmative links between the defendant and the drugs such that he, too, knew of the drugs and constructively possessed them." *Ferguson v. State*, 313 S.W.3d 419, 423 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (quoting *Poindexter*, 153 S.W.3d at 412). "Ultimately, the question of whether the

5

evidence is sufficient to affirmatively link the accused to the contraband must be answered on a case by case basis." *Jenkins*, 76 S.W.3d at 713.

## B. Discussion

Here, appellant argues that: (1) there were two other males standing on the driver's side of the vehicle; (2) he did not flee after the officer told him to stop; (3) the baggies were not in plain view—one under a set of keys, another in a dashboard compartment, and the third on the side of the door; (3) there was no drug paraphernalia found in the vehicle; (4) the cash found could have been connected to the alleged human trafficking; and (5) he identified one of the other men as the owner and consumer of the drugs. However, the following factors are present: (1) Officer Ramirez testified that all three baggies were in plain view and within appellant's reach as he sat in the vehicle; (2) the vehicle where the drugs were found belonged to appellant; (3) although appellant stopped running when instructed to do so, he did flee when Officer Ramirez approached the vehicle; and (4) a large amount of cash was found on appellant's person.

It is not the number of links that is dispositive, but rather, the logical force of all the evidence, direct and circumstantial. *See Evans*, 202 S.W.3d at 162. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318–19; *Adames*, 353 S.W.3d at 860. We conclude that the evidence is sufficient to support appellant's conviction. We overrule his first issue.

## II. ABSENCE OF "EXTRANEOUS OFFENSE" INSTRUCTION

By his second issue, appellant contends the trial court erred in failing to instruct the jury on the burden of proof for evidence of extraneous crimes or bad acts admitted at the punishment phase. Specifically, appellant complains that the "jury was deprived of

the proper evidentiary framework" in which to consider: (1) two pills found in the vehicle which may or may not have been contraband, (2) the alleged human trafficking, and (3) appellant's immigration status. Appellant cites article 37.07 of the code of criminal procedure and *Huizar v. State* in support of his argument that the trial court was required to *sua sponte* instruct the jury on the burden of proof for evidence of extraneous offenses. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West, Westlaw through 2015 R.S.)[2]; *Huizar*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). In *Huizar*, the court of criminal appeals held that a defendant is entitled to a jury instruction on the burden of proof for extraneous offenses used in the punishment phase even if he does not request one, and that the failure to give such an instruction *sua sponte* can be reversible error when there is egregious harm. 12 S.W.3d at 484.

The State argues that the evidence regarding alleged human trafficking was same transaction contextual evidence that was offered to explain the circumstances of the officers' presence at the mobile home. Same transaction contextual evidence is evidence of another crime that is so "intermixed, blended, or connected with" the charged crime that it forms an indivisible criminal transaction. *Atkinson v. State*, 404 S.W.3d 567, 574 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Lamb v. State*, 186 S.W.3d 136, 141 (Tex. App.—Houston [1st Dist.] 2005, no pet.). "Contextual evidence is admitted, not because it has any particular evidentiary purpose, but rather, because in narrating the

---

[2] Article 37.07, section 3(a)(1) provides, in pertinent part:

> evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to . . . evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West, Westlaw through 2015 R.S.).

one offense, it is impracticable to avoid mentioning the other extraneous offense." *Atkinson*, 404 S.W.3d at 574. Same transaction contextual evidence "illuminates the nature of the crime alleged by imparting to the trier of fact information essential to understanding the context and circumstances of events." *Lamb*, 186 S.W.3d at 142. "Extraneous conduct is properly considered 'same transaction contextual evidence' *only when the charged offense would make little or no sense* without also bringing in the extraneous conduct." *Lam v. State*, 25 S.W.3d 233, 237 (Tex. App.—San Antonio 2000, no pet.). The purpose of such evidence is to assist the jury in assessing punishment, and no article 37.07 reasonable doubt instruction is required at punishment regarding such evidence. *Atkinson*, 404 S.W.3d at 574; *Garza v. State*, 2 S.W.3d 331, 335 (Tex. App.—San Antonio 1999, pet. ref'd).

We agree with the State that the evidence that allegedly undocumented persons were found in appellant's mobile home was same transaction contextual evidence because it informed the jury of the reason for the officers' presence at the scene. *See Glockzin v. State*, 220 S.W.3d 140, 151–52 (Tex. App.—Waco 2007, pet. ref'd) (finding evidence of appellant's behavior immediately prior to committing aggravated sexual assault was same transaction contextual evidence, and no reasonable doubt instruction was required); *see also Martinez v. State*, No. 01-09-00724-CR, 2010 WL 724524, at *4 (Tex. App.—Houston [1st Dist.] March 4, 2010, pet. ref'd) (mem. op., not designated for publication) (finding that actions occurring during the course of an aggravated robbery were same transaction contextual evidence, and no reasonable doubt instruction was required at punishment).

However, at the punishment phase, Officer Ramirez was also asked if he found "anything else" inside the vehicle. Officer Ramirez stated that he found an unlabeled

medicine bottle containing two white pills on the front center console and a half-smoked marijuana cigarette on the rear right-passenger-side door. Officer Ramirez also testified that appellant's immigration status was "not legal." Officer Ramirez's testimony that he also found unidentified white pills and a half-smoked marijuana cigarette in appellant's vehicle did not impart to the jury information essential to its understanding of possession of cocaine, the alleged offense. *See Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993) (en banc); *Lamb,* 186 S.W.3d at 142. Similarly, evidence of appellant's immigration status was not "essential" to the jury's understanding of the context and circumstances of the alleged offense. *See Camacho*, 864 S.W.2d at 532; *Lamb*, 186 S.W.3d at 142; *Lam*, 25 S.W.3d at 237 (finding that, because the jury could understand events surrounding murder and aggravated assault without learning of evidence of adolescent undergarments and pornographic videotape found in defendant's room, such evidence was not same transaction contextual evidence). Accordingly, the evidence of the discovery of the white pills and marijuana cigarette and appellant's immigration status was not same transaction contextual evidence, and an article 37.07 reasonable doubt instruction was required in the punishment charge. *See Huizar*, 12 S.W.3d at 484.

The trial court erred in failing to *sua sponte* give the jury a reasonable-doubt instruction. *See id.* When a defendant fails to object to the trial court's failure to include an instruction under article 37.07, as here, jury charge error does not require reversal unless it is so egregious that the defendant was denied a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*; *see*

9

*Zarco v. State,* 210 S.W.3d 816, 823 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Appellant must show he suffered actual rather than theoretical harm. *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

Reviewing the state of the evidence, we first examine whether the State's evidence of appellant's guilt was clear, direct, and unimpeached. *See Zarco*, 210 S.W.3d at 825. At the guilt-innocence phase, Officer Ramirez testified that three baggies of cocaine were found in appellant's vehicle in plain view of the passenger seat where appellant was seated. The baggies were all within appellant's reach; no one else was in the vehicle. In addition, the jury saw photographs of each of the baggies in the locations where they were found. The photographs establish that the baggies were in plain view. Appellant did not testify at the guilt-innocence phase of trial.

During the punishment phase, the State offered Officer Ramirez's testimony that he found the two unidentified pills and the half-smoked marijuana cigarette in appellant's vehicle. Officer Ramirez also testified that inside the mobile home, the officers found fourteen males and five females "later to be determined undocumented immigrants." Officer Ramirez stated that because appellant's immigration status was "not legal," he was subject to a "hold" or "detainer" and could not be released.[3]

Daniel Gonzalez, a probation officer, testified regarding the standard conditions applicable when a person is placed on community supervision. Probation Officer

---

[3] In this context, the terms refer to a detainer issued by Immigration and Customs Enforcement (ICE). An ICE hold (or detainer) serves three functions: (1) it notifies a local law enforcement official that ICE intends to assume custody of a person in the official's custody once the person is no longer detained by the official; (2) it requests information about a person's impending release from the official's custody so ICE may assume custody before the person is released; and (3) it requests that the official maintain custody of a person who would otherwise be released to provide ICE time to assume custody. *Lopez v. State*, No. 04-13-00571-CR, 2014 WL 4627586, at *1 (Tex. App.—San Antonio Sept. 17, 2014, no pet.) (mem. op., not designated for publication) (citing ICE Detainers: *Frequently Asked Questions*, U.S. DEP'T OF HOMELAND SECURITY, https://www.ice.gov/news/library/factsheets/detainer-faqs.htm (last visited on Sept. 3, 2014)).

Gonzalez was asked about how the community supervision procedures are applied to a person subject to a detainer. Gonzalez explained that in some circumstances, a person placed on community supervision could complete some of the requirements even if deported to their country of origin. He testified, however, that a person who was deported subject to a detainer would not be able to fulfill all of the standard conditions of community supervision.

The defense presented the testimony of Sandra Vasquez Reato, appellant's mother. Reato testified that appellant has no criminal background and that he supports his common-law wife and two small children.

Turning to the jury charge at the punishment phase, although the trial court failed to instruct the jury not to consider evidence of extraneous bad acts unless proven beyond a reasonable doubt, the charge did include a reminder that "[t]he burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the [d]efendant." The charge did not mention any of the alleged extraneous bad acts. The charge instructed the jurors that in determining appellant's punishment, they "may take into consideration all the facts shown by the evidence admitted before you in the full trial of the case and the law as submitted to you in the charge." The charge explained that appellant had requested and was eligible to be placed on community supervision. The charge included a list of twenty-four standard terms and conditions of community supervision that may be imposed by the trial court.

Appellant argues that during closing argument at the punishment phase, the State tied in the allegedly unproven extraneous crimes "to construct a narrative of an international drug and alien smuggling ring responsible for a crime wave." We agree that the State's argument emphasized the evidence of the unidentified pills, marijuana

11

cigarette, and the alleged human trafficking. The prosecutor argued, in relevant part, as follows:

[Prosecutor]: Based on the testimony, [appellant] made a mistake possessing drugs, not just cocaine. Another mistake, having illegals in a trailer.

[Defense counsel]: Your Honor, I'm going to object to her saying that he committed other crimes. That was not proven by the evidence.

[Prosecutor]: Your Honor—

[Court]: It's overruled.

[Prosecutor]: You heard from Officer Ramirez today that further examination of the vehicle, he found a marijuana cigarette as well as two pills that were in unlabeled prescription bottles. All of this was in a car that was owned by the defendant and occupied by the defendant.

. . . .

Now, Officer Ramirez also talked about the individuals that he encountered that night once he went inside the trailer. And that picture illustrates the poor living conditions these people were living in. They were crammed into a tight space.

. . . .

Now, we've heard about all this news of violence across the border, drugs, smuggling, and how—we see everyday how it's affecting our lives. It's spilling over to our side of the border. Everyday you turn on the news and you hear something happening, violence, people getting arrested, people getting killed because of these types of crimes. This is not just a simple possession case. How can we stop this from occurring in our community?

. . . .

First, the seriousness of the offense that we're here today for, the possession of the cocaine. It's a Second

12

Degree Felony. But I want you to couple that with his other bad acts that we were introduced to today. He wasn't just carrying cocaine, he was carrying a lot of other drugs.

. . . .

So based on these other bad acts, the money, the drugs, and of course these poor individuals that were found inside the defendant's trailer, I hope you can see that this wasn't just a young kid that had a small personal use amount of cocaine on him. He does not deserve probation.

This is someone that's part of a criminal enterprise, a criminal enterprise that's spilling into our street, crossing into our border and making this area unsafe for our family and for our community. Thank you.

Finally, we observe the punishment assessed by the jury is well below the maximum. During defense counsel's closing argument at punishment, counsel emphasized that the case was "a simple possession case." Counsel argued in favor of a two-year suspended sentence and a fine not to exceed $2,000. The prosecutor argued that the offense was "a very serious crime" and asked the jury to impose "significant prison time." The range of punishment allowed by law was two to twenty years' imprisonment and up to a $10,000 fine. *See* TEX. PENAL CODE ANN. § 12.33 (West, Westlaw through 2015 R.S.). The jury assessed punishment at nine years' imprisonment, in the middle of the range of punishment, and imposed a $9,000 fine.

Applying the egregious harm standard to this record, we conclude that a review of all relevant facts does not reveal that appellant was egregiously harmed by the omission of a reasonable-doubt instruction regarding evidence of extraneous bad acts. *See Zarco*, 210 S.W.3d at 827. The charge error did not affect the very basis of the case, deprive appellant of a valuable right, or vitally affect a defensive theory. *See Almanza*, 686

13

S.W.2d at 172. Therefore, we conclude that the trial court's error was not so egregious as to deprive appellant of a fair and impartial trial. *See id.* We overrule appellant's second issue.

### III. INEFFECTIVE ASSISTANCE

By his third issue, appellant contends that he was denied effective assistance of counsel when his counsel failed to object to evidence regarding appellant's national origin and immigration status at the punishment phase. According to appellant, "the State played the national origin card to the jury" and defense counsel failed to object to such "inflammatory national origin testimony." Appellant also complains that his probation officer testified regarding "how an illegal alien completes probation."

"To obtain a reversal of a conviction under the *Strickland* test, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding." *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient performance means that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Ex parte Napper*, 322 S.W.3d 202, 246 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 687). "The prejudice prong of *Strickland* requires showing 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 248 (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "[E]ach case must be judged on its own unique facts." *Davis*, 278 S.W.3d at 353.

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). A reviewing court will not second-guess legitimate tactical decisions made by trial counsel. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate . . . ."). Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851. An allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814 n.6.

The State argues that counsel was not ineffective for failing to object to evidence of appellant's immigration status because appellant has not shown that such evidence was inadmissible. *See Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002) ("When an ineffective assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show, as part of his claim, that the evidence was inadmissible."). The State further argues that the record is silent as to the reasons for counsel's failure to object and that we should not find counsel ineffective unless his conduct was so outrageous that no competent attorney would have made such a decision. *See Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

Appellant asserts that the State asked Officer Ramirez about appellant's "national origin and immigration status." However, in the portion of the record cited by appellant, the State asked Officer Ramirez only about appellant's immigration status; there was no reference to appellant's national origin. After Officer Ramirez responded that appellant's immigration status was "not legal," he was asked how he verified this information. Officer Ramirez responded, "[b]y making contact with the Hidalgo County Sheriff's Office, jail records." The State did not at any time offer other evidence establishing appellant's immigration status.

The only reference to appellant's national origin was when the State elicited testimony from Reato on cross-examination. The prosecutor asked Reato where appellant was born; she replied, "Monterrey, Nuevo Leon." The State then asked if appellant was a United States citizen; Reato answered, "[n]o."

During Probation Officer Gonzalez's testimony, he was asked to describe the process for placing a person with an "ICE hold" on probation. He explained that persons with an "ICE hold" are usually deported. Gonzalez was asked if it was difficult for someone living in another country to comply with all the conditions of probation. He responded that such a person could report by mail, but could not fulfill the other conditions of probation. Gonzalez was asked, "would a person that has an ICE hold and subsequently deported and then he—they're placed on probation, would they be able to comply with that probation, all of the conditions of their probation?" Gonzalez answered, "[n]o." On cross-examination, Gonzalez admitted that he had no knowledge of appellant's legal status or eligibility for legal status in the United States.

The State argues that, by requesting that the jury consider community supervision, appellant raised the issue of his suitability for community supervision to the jury.

16

According to the State, the focus of Gonzalez's testimony "was not that [a]ppellant should be punished for lacking citizenship or legal residency in this country, but rather that concerned the practical impossibility" of his participation in community supervision if he were deported.

The State cites *Infante v. State* in support of its argument. 25 S.W.3d 725, 727 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). In *Infante,* the First Court of Appeals distinguished between "considering [at the punishment phase of trial] a defendant's status as an illegal alien and a defendant's alienage." *Id.* The *Infante* court found that inquiring about a defendant's legal status at the punishment phase was proper pursuant to article 37.07, section 3(a) of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (allowing the admission of evidence of extraneous offenses).[4]

The State also cites *Lopez v. State*, an unpublished case from the Fourth Court of Appeals that addresses a very similar issue. *See* Nos. 04-13-00571-CR & 04-13-572-CR, 2014 WL 4627586, at *2 (Tex. App.—San Antonio Sept. 17, 2014, no pet.) (mem. op., not designated for publication). In *Lopez,* our sister court found that, by applying for community supervision, Lopez made his ability to complete the terms of community supervision an issue during the punishment phase. *See id.* Accordingly, the *Lopez* Court held that testimony regarding the effect of Lopez's ICE hold was relevant for the jury to consider in determining Lopez's suitability for community supervision. *See id.*

Appellant cites two cases in support of his argument: *Ramirez v. State*, 65 S.W.3d 156, 160 (Tex. App.—Amarillo 2001, pet. ref'd), and *Riascos v. State*, 792 S.W.2d 754,

---

[4] We note that, as in *Infante v. State,* the record in the present case does not establish that appellant was an undocumented person. *See* 25 S.W.3d 725, 727 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

758 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). We find both cases to be distinguishable.

In *Ramirez*, the defendant was convicted of aggravated sexual assault. 65 S.W.3d at 157. On appeal, the court found that the defendant was denied effective assistance of counsel because his counsel: (1) failed to object to evidence of the defendant's drinking, even though there were no allegations that alcohol was involved in the crime; (2) failed to object to the State repeatedly referring to the defendant's neighborhood as "campito"; (3) during summation, told the jurors he did not want them to perceive the defendant "as a drunk Mexican"; and (4) failed to object when the prosecutor misstated the context by telling the jurors that defense counsel called his own client "a drunk Mexican." *Id.* at 160.

In *Riascos*, the defendant was convicted of murder related to a $200 debt of an unknown character. 792 S.W.2d at 755. The Fourteenth Court found that the defendant was denied effective assistance of counsel because his counsel: (1) failed to object when the prosecutor repeatedly referred to the defendant in his opening and closing statements as a Colombian illegal alien; (2) failed to object to evidence that the murder was tied to Colombian drug-trafficking; and (3) opened the door to extraneous offenses committed by the defendant during the testimony of an alibi witness. *Id.* at 756–58.

In contrast, only a very brief reference was made to appellant being born in Mexico. Probation Officer Gonzalez's testimony provided the jury with information regarding appellant's ability to complete standard terms of community supervision if he were deported. We do not find the brief references to appellant's immigration status to be the same type of prejudicial and inflammatory comments at issue in either *Ramirez* or *Riascos.* We find that appellant has not shown that the brief reference to appellant's immigration status or the testimony regarding the suitability of community supervision for

18

a deportee was inadmissible evidence.  *See Ortiz*, 93 S.W.3d at 93.  Accordingly, appellant has not shown that his counsel was ineffective for failing to object to such evidence.  *See id.*  We overrule appellant's third issue.

## IV.  CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
12th day of May, 2016.